STATE of Missouri, Respondent,

v.

Edward Randall EMMONS, Appellant.

No. WD 30858.

Missouri Court of Appeals,
Western District.

March 3, 1980.

Dennis E. Dibler, Grandview, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Earl W. Brown, III, Asst. Atty. Gen., Kansas City, for respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Presiding Judge.

Appellant Emmons was convicted in a jury trial of the offenses of burglary, second degree, § 560.045, RSMo 1969, and

stealing, § 560.156, RSMo 1969, and was sentenced, in accordance with the recommendation of the jury, to terms of ten and five years which the court directed be served concurrently. Emmons appeals contending, first, that the evidence failed to establish his intent to commit the offense of stealing and, second, that conduct by the court denied him a fair trial. Affirmed.

Substantial and, in the main, uncontradicted evidence permitted the jury to find the following facts. Bobby Martin, who lived on a farm in Mercer County, Missouri near Lineville, Iowa, was at work in his fields on July 3, 1978. From his tractor he observed a car enter the driveway and stop at his house. After a brief interval, the car left but soon returned. With this, Martin decided to investigate because his wife was not at home. He stopped his tractor, entered his pickup truck and as he neared the house he observed a man vault the porch railing, get in the car and drive away. The distance precluded identification of the fleeing individual.

Upon entering his house, Martin discovered that camera equipment which he used as a part-time professional photographer and which he valued at $3200.00 was missing from the place where he normally kept it in his living room. He also found a camera lens, a part of that equipment, in the driveway. He thereafter attempted to pursue the departing vehicle, which by then was out of sight, but he was unsuccessful. Martin continued on to Lineville where he reported the incident to the police.

Some two months later, Emmons was arrested in Iowa on an unrelated charge. A routine inquiry disclosed an outstanding warrant from Mercer County issued for Emmons' detention as the suspect in the burglary of the Martin home. Identification of Emmons had come from the proprietor of a motel where Emmons had registered and spent the night of July 3. After Emmons' departure from the motel a camera case left behind had been traced from a business card to Martin who identified the equipment as part of that taken in the burglary. Following Emmons' arrest, a search of his travel trailer pursuant to a warrant resulted in the recovery of additional camera equipment belonging to Martin.

At trial, a statement given by Emmons to the Iowa police following his arrest was introduced in evidence by the state. In the statement, Emmons acknowledged that he was in fact the man who had entered the Martin farmhouse and who had taken the photographic equipment. He denied, however, any intent to steal the items and explained that he had been authorized by a former female companion to take the equipment which had been given to her by a man "in payment for her services," apparently as a prostitute.

The debt owed Emmons by the girl was, according to him, for rent of $100.00 under an agreement for sharing expenses while he and the girl occupied the same apartment and for an engagement ring which Emmons had bought for $17.00. In Emmons' statement he said that the Martin property had been described to him as belonging to the person from whom the girl was to receive the cameras and by taking the equipment himself, he would square the three-way account. He also said he had been informed in advance that he would find no one at the house and should merely enter and taken the items. Subsequent testimony by Emmons at trial was substantially in accordance with the signed statement.

Emmons contends here that his motion for directed verdict of acquittal should have been sustained because there was no proof his entry into the Martin house was with the intent to steal. This, he argues, must follow because the state's evidence included Emmons' signed statement in which he explained the entry as permissive. As we perceive Emmons' contention, he would confine the state on proof of his intent to commit the felony of stealing to the evidence of the signed statement wherein an innocent motive is conclusively demonstrated. Stated somewhat differently, Emmons argues that when the state offers evidence containing exculpatory matters, the state is bound by that evidence and the prosecution

must fail if the evidence bears on an essential element of the offense.

The elements of the offense of burglary, second degree, consist of breaking and entering with the intent to commit a felony or to steal therein. *State v. Sallee*, 436 S.W.2d 246 (Mo.1969). The intent to commit a felony or to steal must be established beyond a reasonable doubt, but may be proved by circumstantial evidence because intent can rarely be shown by direct evidence. *State v. Sloan*, 548 S.W.2d 633 (Mo.App.1977). Circumstantial evidence need not conclusively prove guilt and the case may properly be given to the jury even though some other hypothesis consistent with innocence exists. *State v. Brunson*, 516 S.W.2d 799 (Mo.App.1974).

The fallacy of Emmons' argument lies in his exposition of the thesis that the state is bound by the proof of facts consistent with all evidence it introduces. Contrary to Emmons' assertions, the state is not bound by self-serving statements contained in an accused's admissions, but may challenge as false portions of the accused's statement even though the statement has been offered in evidence by the state. *State v. Caffey*, 457 S.W.2d 657 (Mo.1970).

The credibility of witnesses and the weight to be accorded testimony, even though uncontradicted, is for the jury, which may believe all the testimony of a witness or none, or may reject part and accept part. *State v. Wynn*, 391 S.W.2d 245 (Mo.1965). Thus, the jury in this case was entitled to disbelieve Emmons' explanation of his presence at the Martin farm and his subsequent possession of the missing camera equipment while at the same time accepting his acknowledgement that he was the man seen by Martin at the home on July 3.

Emmons' contention that the evidence presumptively established his innocent belief of a lawful right to enter the house and remove the property is without merit. Facts implicating a felonious intent to steal were: Emmons' hasty departure from the Martin farm when the owner approached; the loss of a valuable camera lens dropped by Emmons while in flight from the scene; the disparity between the value of the camera equipment and the debt allegedly owed Emmons; the presence of Martin's business cards in the camera cases; and, the inherent implausibility of Emmons' account of the affair.

The jury was entitled to believe or disbelieve Emmons' explanation and if they found, as the verdict indicates, that Emmons had been untruthful, ample circumstantial evidence supports the conclusion that Emmons entered the Martin residence with intent to steal what property he could find.

Emmons' second point concerns events which occurred in the course of the trial after the conclusion of the evidence and before the jury was instructed. The trial record proper contains no indication of the occurrence about which Emmons later complained. The details are recorded for the first time in testimony offered in support of Emmons' motion for a new trial. While that evidence was in some respects conflicting, a general portrayal of the scene as later recounted by Emmons and other witnesses may be drawn.

During recesses in the trial, it appears that Emmons was under no restraints and did not remain in the courthouse but was late in returning when court reconvened. At least once Emmons went to a nearby tavern during a recess and drank beer and smoked marijuana. The recess for the instruction conference lasted about thirty minutes. When informed that the court and counsel were ready to proceed, the bailiff seated the jury but before the judge took the bench it was noted that Emmons was not present. In fact, Emmons was at this time returning and was about to enter the courthouse. Officers were dispatched to locate him, they encountered him on the stairs, and all returned to the courtroom together. Emmons was placed under no physical restraint and he took his seat at the counsel table while the officers resumed their positions. Emmons now complains

that his return to the courtroom in the company of the officers and in the presence of the jury conveyed the impression that he had attempted to flee and had been recaptured. This he says prejudiced his case and denied him a fair trial in violation of constitutional guarantees.

 Even were it to be assumed that Emmons' reentry into the courtroom did convey to the jury the adverse impression which he asserts, his objection comes too late. As noted above, Emmons raised no objection at the time of the events, made no request for any admonition to the jury and did not seek a mistrial. The point was presented for the first time in the motion for new trial, thus depriving the court of an opportunity to evaluate the situation at the time and take current corrective action. The assignment of error in the motion for new trial must be based on a request for relief presented at trial and cannot be voiced for the first time after trial where no grounds have been laid. *State v. Jones*, 515 S.W.2d 504 (Mo.1974).

The circumstances of this case are analogous to those described in *State v. Durham*, 367 S.W.2d 619 (Mo.1963). There the defendant complained of prejudice when a disturbance in the courtroom in the presence of the jury was occasioned by the attempted escape of a codefendant whose case had been severed for a separate trial. Officers with drawn guns ran in pursuit of the individual and comments which could have been overheard by the jury indicated the existence of some relationship between the defendant and the escapee. In that case, as here, no objection was made at the time, the claim of prejudice being raised for the first time in the new trial motion. The court commented when refusing to consider the point on appeal:

> "It is obvious that the defendant, having passed the incident at the time without a request for any relief, either considered the incident of no consequence or was willing to gamble on the result and the effect it might have on the jury. In either event after verdict he cannot contend that by reason thereof he is entitled

to a new trial." (Citations omitted.) *Durham* at 624.

 Apart from Emmons' failure to preserve the question of alleged prejudice, the point also fails on other grounds. If it be assumed that an impression was conveyed to jurors that Emmons was returned to the courtroom involuntarily, he has offered no evidence to show that he was in fact prejudiced. Such allegations of prejudice do not prove themselves and, in the absence of proof, nothing is preserved for review. *State v. Sallee, supra; State v. Anderson*, 555 S.W.2d 362 (Mo.App.1977). Emmons' contention that a guilty verdict was returned in less than one hour is not the character or quality of evidence necessary to demonstrate prejudice because the verdict may equally well have been attributable to any number of other factors, including the substantial evidence pointing to Emmons' guilt.

The judgment and sentence are affirmed.

All concur.