**STATE of Missouri, Respondent,**

v.

**Larry N. WALTON, Appellant.**

**No. WD 46391.**

Missouri Court of Appeals,
Western District.

June 13, 1995.

---

1. Rule references are to Missouri Rules of Court (1995).

Lew Kollias, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before SPINDEN, P.J., and ULRICH and SMART, JJ.

ULRICH, Judge.

The appellant, Larry Walton, was originally charged by indictment with second degree murder, § 565.021.1(2), RSMo 1994, first degree robbery, § 569.020, RSMo 1994, and two counts of armed criminal action, § 571.015, RSMo 1994. The indictment was later amended by information charging Mr. Walton with the same counts and asserting him to be a prior, persistent and class X offender, § 558.016, RSMo 1994, and § 558.019, RSMo 1994. Ultimately, a mistrial was declared on the count of second degree felony murder and the related armed criminal action charge, and the jury returned guilty verdicts on the counts of first degree robbery and related armed criminal action. Judgment was entered in accordance with the verdict and Mr. Walton was sentenced to concurrent sentences of 25 and 5 years imprisonment for first degree robbery and armed criminal action, respectively.

Mr. Walton filed a *pro se* Rule 29.15 motion seeking to vacate the convictions and sentences imposed. Appointed counsel filed an amended motion alleging ineffective assistance of counsel at trial for failing to call several additional witnesses to testify at a pretrial suppression hearing that Mr. Walton had been sleepless and had been using alcohol and crack cocaine in the 36-hour period immediately prior to his arrest. Mr. Walton claimed the witnesses could have established that, due to his condition, his statement to police was involuntary. After an evidentiary hearing, the court entered its order, together with findings of fact and conclusions of law, overruling appellant's motion.

Mr. Walton appeals the judgment of conviction and the denial of his motion for post-conviction relief. The judgment of conviction and the order denying the Rule 29.15 post-conviction motion are affirmed.

## FACTS

At approximately 9:00 p.m. on the night of April 19, 1991, Mr. Walton and a companion, Justice Mays, entered Looney's, a convenience store located at 55th and Euclid in Kansas City, armed with handguns and wearing ski masks. Mr. Walton was carrying a Taurus .357 Magnum, and Mr. Mays was armed with a Cobra semi-automatic 9-mm pistol.

The men approached Mr. Looney, the store manager, and Mr. Mays pointed the weapon at Mr. Looney and apparently said, "You know what this is." Mr. Walton then went behind the counter, pointed the handgun at Mr. Looney, and told him to open the register. After opening the register, Mr. Looney started putting money in a sack as instructed.

At the time of the robbery, there were numerous customers in the store, including several children. When the two men entered the store, the customers ran to the back of the store. Mr. Looney later identified Mr. Walton because he had seen Mr. Walton in the store earlier that night.

After Mr. Looney surrendered the sack of money, the two robbers left the store and ran west. Mr. Looney then ran outside and began shooting at the fleeing men with a 9-mm Glock semi-automatic pistol. One of the shots struck Mr. Mays in the back causing him to stumble.

The two men got into an automobile and drove away. Mr. Mays' condition worsened. Mr. Walton left Mr. Mays on a sidewalk near Truman Medical Center and called 911. Police found Mr. Mays' body at the location. Mr. Mays was killed by a single gunshot fired from Mr. Looney's pistol.

Mr. Walton was arrested at 8:43 p.m. on April 20, 1991, the day after the robbery. He was taken to the police station, and after waiving his *Miranda* rights, gave a statement regarding the robbery of Looney's convenience store and the shooting death of Justice Mays. After making the statement and further waiver of rights, Mr. Walton took the officers to a truck parked at 54th and Michigan where he had hidden the two handguns used in the robbery. A ski mask and bullets were also recovered by the police. Upon returning back to the station, Mr. Walton made a second videotaped statement in which he confirmed that the weapons and mask recovered were used in the robbery.

### I

Mr. Walton's first point asserts that the trial court erred in allowing chief prosecutor, Michael Hunt, to testify in rebuttal against a defense witness. Rhonda Walton, Mr. Walton's wife, testified at trial for the defendant. On cross examination, she testified that she never told prosecutors Mr. Walton had told her that he had been involved in a robbery and someone had been killed. At the conclusion of defendant's case, the prosecution called Mr. Hunt, the chief prosecutor, to testify to statements made by Mrs. Walton to him and to Mr. Peters, the other prosecutor, during a pretrial interview. Mr. Hunt testified that Mrs. Walton told them her husband disclosed to her he had been involved in a robbery and that someone had died. Mr. Walton argues that Mr. Hunt's testimony was beyond the scope of direct examination, was not essential, and was extremely prejudicial to him.

The role of attorney, especially prosecutor in a criminal trial, and witness are so signifi-

cantly different that inherent problems are encountered when one person performs both. The prosecutor is proactive and carries the state's burden of proof. As the state's advocate, he attempts to persuade the jury to the state's position. He speaks to the venire directly at the earliest stage of the trial, the voir dire process, before the jury has even been selected, aware that he is selling himself and his cause to the ultimate triers of fact. He helps choose the jury. He speaks persuasively to the jury in his opening statement to prepare it to hear the evidence he will present. He chooses the questions he asks the witnesses and the manner they are asked, always considering how the questions as well as the answers will influence the jury. Ultimately, he argues the evidence, its reasonable inferences, the impact of the offense, the credibility of the witnesses and numerous other related matters. Always, within well defined restrictions, he attempts to influence the jury by developing a relationship with the jurors.

Unlike the prosecutor, the witness plays a limited role and responds to the attorney. The jury determines the credibility of the witnesses who are appearing in an unfamiliar environment, frequently for the first time in their lives in a courtroom, testifying under oath before strangers about fleeting events that happened at some time in the distant past. The witness' manifested idiosyncrasies are observed, his demeanor is studied, his responses analyzed, and his credibility is determined by the jury. His testimony is compared to the testimony of other witnesses and, when their testimony conflicts, the jury decides whom it believes.

Thus, because the roles of the prosecutor and witness are so different, for one person to perform both roles is fraught with danger. The prosecutor who serves also as witness may have an advantage over other witnesses because he has had the opportunity to perform before the jury. Perhaps most importantly, the prosecutor uniquely represents the state, both in his role at trial and in the minds of the jury. If he is permitted to testify as another witness, the jury may perceive the state to vouch for facts in a way no other witness can, not even law enforcement officers, and such perception may unfairly cause the jury to give the prosecutor witness more or less credibility.

Recognizing the inherent problems when the prosecuting attorney is also a witness, the occurrence is not automatically condemned. While "an attorney should withdraw from the case if he is likely to be needed as a witness, it does not follow that a prosecutor must withdraw whenever his testimony becomes necessary on some minor matter due to circumstances in the case." *Flowers v. State,* 776 S.W.2d 444, 449 (Mo. App.1989). The trial court exercises discretion in determining to what extent and as to what matters a prosecuting attorney may be permitted to testify. *State v. Hayes,* 473 S.W.2d 688, 691 (Mo.1971). Although the prosecutor is not incompetent to be a witness, "the right of a prosecuting attorney to testify in a criminal case 'is strictly limited to those instances where his testimony is made necessary by the peculiar and unusual circumstances of the case. Even then, his functions as a prosecuting attorney and as a witness should be disassociated.'" *Id.* (quoting *Tomlin v. State,* 81 Nev. 620, 407 P.2d 1020 (1965), *cert. denied, Queen v. Fogliani,* 384 U.S. 990, 86 S.Ct. 1894, 16 L.Ed.2d 1006 (1966)).

In this case, Mr. Hunt's testimony was made necessary by the circumstances of the case. No other witnesses were present at the pretrial interview with the defendant's wife other than the prosecuting attorneys who could testify concerning Mrs. Walton's statements. Importantly, Mr. Hunt was not aware, prior to trial, that he would be a necessary witness. The prosecution did not anticipate that Mrs. Walton would change her testimony at trial and was surprised on cross examination that she did. Only then did the prosecution decide to call Mr. Hunt to rebut her testimony about what her husband had told her.

In *State v. Schade,* 584 S.W.2d 635 (Mo. App.1979), an assistant prosecuting attorney was allowed to testify in a criminal trial to certain incriminating statements made by the defendant in a civil deposition. While the court explained that the practice of calling a prosecutor to prove statements in a deposi-

tion is not to be encouraged, it found no error where the assistant prosecutor was not involved in prosecuting the defendant and he was not asked on direct examination if he was a prosecutor. *Id.* at 636.

This case, however, is dissimilar to those cited which uphold the prosecutor testifying. Unlike *Flowers,* the testimony of the prosecuting attorney in this case did not involve a minor matter. He testified that the defendant's wife told him her husband admitted to her that he committed the crime in contravention of her testimony. Unlike *Schade,* one of the prosecutors trying this case also participated in the trial both before and after he testified.

Although a second prosecuting attorney jointly tried the case, Mr. Hunt continued to participate as a prosecutor after he testified. He engaged in the state's closing argument, although neither he nor the other prosecuting attorney mentioned to the jury his testimony in closing argument. The participation of the prosecuting attorney after he testified, under the circumstances in this case, abused the requirement that when such situation may not be avoided and the trial court permits the prosecutor's limited testimony, the functions of prosecutor and witness must be "disassociated." *State v. Hayes,* 473 S.W.2d at 691.

Only prejudicial error requires reversal. *State v. Kurtz,* 564 S.W.2d 856, 861 (Mo. banc 1978). Considering the circumstances of the case, even though the trial court abused its discretion in allowing a prosecuting attorney to rebut Mrs. Walton's testimony and to continue to participate in the trial, Mr. Walton was not prejudiced. Mr. Walton's confession and his leading police officers to the firearms used in the robbery provided overwhelming evidence of his guilt, and the resultant error was harmless beyond a reasonable doubt. *State v. Langston,* 889 S.W.2d 93, 99 (Mo.App.1994).

Point I is denied.

## II

As point two, Mr. Walton claims the trial court erred in denying his motion to suppress statements he made after arrest based on impaired mental capacity due to intoxication and lack of sleep. He argues that the court did not make a specific finding that his confession was a product of a knowing and intelligent waiver of his *Miranda* rights.

"[W]aivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.'" *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1883–84, 68 L.Ed.2d 378 (1981) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Mr. Walton relies on *State v. Bittick,* 806 S.W.2d 652 (Mo. banc 1991), for his argument that the court's findings were insufficient to demonstrate that his waiver of rights were knowing and intelligent. In *Bittick,* a defendant argued that his diminished mental capacity resulting from intoxication, delirium tremens and his low level of education precluded a valid waiver of his rights to counsel and to remain silent. *Bittick,* 806 S.W.2d at 658. The trial court found there was no evidence of police coercion or intimidation, and thus the confession was voluntary. *Id.* However, it failed to determine whether Mr. Bittick's confession rested on a knowing and intelligent waiver and the case was remanded for a determination of that issue. *Id.*

In ruling on the admissibility of a defendant's statements, the court need not make a particular formal finding. *State v. Schnick,* 819 S.W.2d 330, 336 (Mo. banc 1991). Instead, the trial court's conclusions must make unmistakably clear that the confession is voluntary. *Id.* (citing *Sims v. Georgia,* 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967)). The Missouri Supreme Court explained in *State v. Schnick,* 819 S.W.2d at 336, that "[i]f one is informed of his right to remain silent under *Miranda,* and understands his right to remain silent under *Miranda,* and thereafter makes voluntary statements, it is absurd to say that such person has not made a knowing and intelligent waiver of his right to remain silent."

*Id.* Coercion by the police is a necessary predicate to the finding that a statement is not voluntary. *State v. Anderson,* 862 S.W.2d 425, 431 (Mo.App.1993) (citing *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)). Evidence of a defendant's physical condition alone unsupported by any evidence of coercive police activity is insufficient to show a confession was involuntary. *State v. Schnick,* 819 S.W.2d 330, 338 (Mo. banc 1991).

In this case, a hearing was held on the issue of whether Mr. Walton had voluntarily and intelligently waived his *Miranda* rights. Mr. Walton argued that sleep deprivation and intoxication did not allow him to make a voluntary statement to police. He, however, made no argument that the police used coercion to obtain a confession. Evidence was presented that Mr. Walton was read his *Miranda* warnings before being interrogated and understood them. The police officers that interrogated him testified that Mr. Walton read and signed a *Miranda* waiver form before the first videotaped confession. He was given and waived the warnings again before confirming that the weapons and mask recovered were used in the robbery in a second videotaped confession. After all evidence was presented to the court and the defendant made his argument on this issue, the trial court denied the motion. "[T]he trial court's denial of the motion made clear that it found defendant's waiver knowing and intelligent." *State v. Scott,* 841 S.W.2d 787, 789 (Mo.App.1992).

Point two is denied.

### III

■ For his third point, Mr. Walton claims the motion court erred in denying his Rule 29.15 postconviction relief motion for ineffective assistance of counsel. He argues that counsel was ineffective in failing to call additional witnesses at the suppression hearing to testify as to his lack of sleep and intoxication at the time of his confession to police. He asserts that his condition affected the intelligence and voluntariness with which he waived his constitutional rights and that these witnesses would have corroborated his claim that his confession was involuntary be-

cause of his intoxication. Mr. Walton argues that the evidence would have been important for the jury in determining the weight to be given to his confession.

At the evidentiary hearing, Mr. Walton called several witnesses to testify that he was intoxicated prior to his arrest and statement to the police. Among those called was his former girlfriend, Terri Wynn, who testified that on the night of the robbery around 8:30 p.m., Mr. Walton and Mr. Mays came to her house, smoked crack cocaine, and drank alcohol. Victor Walton, Mr. Walton's brother, also testified at the evidentiary hearing as to Mr. Walton's condition prior to his arrest. He said that on April 20, 1991, the day after the robbery, Mr. Walton complained to him about a lack of sleep. He also testified that they had gone to their uncle's house where they drank alcohol and then had gone to Andre Spears' house where Mr. Walton continued to drink. Mr. Walton's uncle, Clarence Wilson, and Andre Spears confirmed that they had been drinking alcohol with Mr. Walton the evening he was arrested.

On August 12, 1993, the court entered an order together with findings of fact and conclusions of law denying postconviction relief based on ineffective assistance of counsel. Judge Meyers concluded that (1) counsel's failure to call the additional witnesses was not the result of a lack of investigation, (2) any additional testimony regarding Mr. Walton's intoxication at the time of his statement to police would have been cumulative, and (3) additional testimony on this issue would not have been helpful to his defense where Mr. Walton's intoxication by case law could not have prevented him from giving a voluntary statement.

■ Appellate review of the denial of a postconviction motion is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(j); *State v. Nolan,* 872 S.W.2d 99, 104 (Mo. banc 1994). Findings and conclusions are clearly erroneous only if after a review of the entire record the court is left with the definite and firm impression that a mistake has been made. *Nolan,* 872 S.W.2d at 104.

To prevail on an ineffective assistance of counsel claim, a convicted defendant must show that (1) his attorney's performance was deficient in that he failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "Prejudice exists only where trial counsel's acts or failures to act are outcome determinative." *State v. Harris*, 870 S.W.2d 798, 814 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). The movant must show a reasonable probability that, but for his attorney's unprofessional errors, the result of the proceeding would have been different. *Id.* (citing *State v. Ervin*, 835 S.W.2d 905, 929 (Mo. banc 1992)). He must also overcome the presumption that counsel is competent. *Id.*

Reasonable trial strategy will not support a claim of ineffective assistance of counsel. *Id.* On appeal, counsel's decision not to call a witness is presumed to be a decision of trial strategy. *State v. Walden*, 861 S.W.2d 182, 186 (Mo.App.1993). To show that defense counsel was ineffective in failing to call a witness to testify, the movant must prove that (1) his attorney's failure to call the witness was something other than reasonable trial strategy, (2) the witness could have been located through reasonable investigation and would have testified if called, and (3) the witness's testimony would have provided movant with a viable defense. *Id.* (citing *State v. Buchanan*, 836 S.W.2d 90, 93 (Mo. App.1992)).

Mr. Walton fails to prove the elements above. First, he makes no argument and presents no evidence that his attorney's failure to call the additional witnesses was anything other than trial strategy. Secondly, the additional witnesses' testimony would not have provided Mr. Walton with a viable defense. As discussed in point II, evidence of a defendant's physical condition alone unsupported by any evidence of coercion by the police is insufficient to show a confession was involuntary. *State v. Schnick*, 819 S.W.2d 330, 338 (Mo. banc 1991). Mr. Walton argues that sleep deprivation and intoxication did not allow him to make a voluntary, intelligent statement to police. He, however, makes no argument that the police used coercion to obtain a confession. Therefore, any evidence from additional witnesses of his physical condition would not have aided in Mr. Walton's defense.

Finally, Mr. Walton was able to present evidence of his physical condition leading up to the time of his confession. At the pretrial hearing, he testified that he had been drinking heavily for two days prior to this arrest and had been without sleep. His brother, Larry Walton, offered similar testimony at the suppression hearing and at trial. Likewise, Mr. Walton's wife testified at trial that he had been drinking on the evening of April 19, 1991. The testimony of the additional witnesses, therefore, would only have been cumulative. *See State v. Schnick*, 819 S.W.2d at 338 (**holding counsel's failure to call additional witnesses to testify about the physical and mental condition of defendant in his effort to suppress his statement would have been cumulative to other evidence of defendant's condition.**) Counsel was not ineffective for failing to call additional witnesses. The motion court's findings of fact and conclusions of law were not clearly erroneous.

Point III is denied.

## IV

In his last point, Mr. Walton argues that the trial court erred in submitting Instruction No. 4, patterned after MAI–CR3d 302.04, which defines "reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt." Mr. Walton contends that the "firmly convinced" definition diminishes the meaning of reasonable doubt and allows the jury to convict a defendant based on a degree of proof below that required by the Due Process Clause. He asserts that, at the very least, the instruction should have been modified by defining reasonable doubt using the "hesitate to act" language employed by some federal courts. This argument has been repeatedly and consistently rejected by the Missouri Supreme Court. *State v. Parker*, 886 S.W.2d 908, 923 (Mo.

banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995); *State v. Wise,* 879 S.W.2d 494, 517 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995); *State v. Harris,* 870 S.W.2d 798, 811 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994).

Point IV is denied.

The judgment of conviction and the order denying the Rule 29.15 motion for postconviction relief are affirmed.

All concur.