**STATE of Missouri, Respondent,**

v.

**Michael WERNEKE, Appellant.**

**No. WD 53295.**

Missouri Court of Appeals,
Western District.

Dec. 23, 1997.

Gary E. Brotherton, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City; Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before SMART, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Michael Werneke appeals his jury conviction of one count of child molestation. Mr. Werneke claims that the trial court abused

its discretion in admitting the victim's hearsay statements under Section 491.075, RSMo 1994, because they were unreliable as was indicated by the victim's inconsistent testimony at trial. The trial court's pre-trial finding of reliability of the hearsay statements was not an abuse of discretion. In any event, because the jury did not convict Mr. Werneke on the count as to which the victim's testimony was inconsistent, no prejudice could have resulted from the admission of those statements.

Mr. Werneke further argues that the trial court abused its discretion in allowing the victim to be recalled after she initially testified and following an out-of-court conversation between her and the prosecutor. He argues that the trial court abused its discretion in denying his motion to disqualify the prosecutor because he had become a necessary witness due to this conversation with the victim. We find that the trial court acted within its considerable discretion in permitting the victim to be recalled as a witness. We also find that the court did not err in failing to disqualify the prosecutor. Such disqualification will be required only where the attorney is the only available person to testify on the issue. Here, there were two other witnesses to the conversation. Moreover, no formal attempt was ever made to call the prosecutor as a witness.

Judgment affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August 1995, the victim, then six years old, told her babysitter, Candace Hoehns, her aunt, Gail Dillon, and her aunt's boyfriend, Dan Borck, (using age-appropriate and explicit language) that her stepfather, Michael Werneke, had sexually molested her on numerous occasions. Mr. Borck called the police. The child was then interviewed by Deputy Maria Shaffer, who had special training in interviewing children regarding allegations of sexual abuse. The child told the deputy essentially the same things that she had told her babysitter, her aunt, and her aunt's boyfriend. She also told Deputy Shaffer that she had not previously told her mother or

anyone else about her stepfather's conduct because she was afraid that she would not be believed, that Mr. Werneke would deny it, and that she would get in trouble.

On September 15, 1995, Dr. Carl Scott performed a Sexual Assault Forensic Examination (SAFE) on the victim. Dr. Scott has special training in interviewing and examining children who have allegedly been abused. The six-year-old victim gave Dr. Scott the same general account of Mr. Werneke's acts she had previously given to the others. Dr. Scott's exam did not reveal any physical signs of abuse. He considered these results "not surprising" and consistent with the acts described by the child. He testified that there were "multiple things that can happen without me seeing any physical evidence whatsoever, but still happen." Dr. Scott found that the six-year-old exhibited behavioral indicators that were "very consistent" with sexual abuse.

Mr. Werneke was indicted by a Pettis County Grand Jury on October 2, 1995, on three counts. Count I charged the defendant with statutory sodomy in violation of Section 566.062[1] for "an act involving the genitals of defendant and the mouth of the victim." Count II charged Mr. Werneke with child molestation in the first degree in violation of Section 566.067 for "touching the genitals of [the victim] with his hand." Count III charged the defendant with child molestation in the first degree for "touching the genitals of [the victim] with his genitals."

On January 24, 1996, the court held a hearing to consider the State's motion to admit the victim's out-of-court statements to Candace Hoehns, Gail Dillon, Dan Borck, Deputy Maria Shaffer, and Dr. Carl Scott, as substantive evidence as permitted by Section 491.075. That section states:

> 1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substan-

---

1. All statutory citations are to RSMo 1994, unless otherwise indicated.

tive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2)(a) The child testifies at the proceedings. . . .

§ 491.075.

Here, the victim was to testify at trial. The issue was thus whether the victim's out-of-court statements had sufficient indicia of reliability and trustworthiness to be admitted. The court found that the statements made by the victim had "sufficient and ample indicia of . . . reliability and trustworthiness" and ruled them admissible.

The first trial of this cause began on May 1, 1996. The victim testified, and witnesses Candace Hoehns, Gail Dillon, Dan Borck, Deputy Maria Shaffer, and Dr. Alan Scott were allowed to testify as to the statements the victim had made to them at the time they learned of the alleged abuse. The jury failed to reach a verdict as to Counts I and II, which alleged mouth-to-genital contact and hand-to-genital contact, respectively, and the court declared a mistrial as to those counts. The court granted Mr. Werneke's Motion for Acquittal on Count III, alleging genital-to-genital contact, because of inadequate evidence on that count.[2]

The State elected to retry Mr. Werneke on the charges in Counts I and II, mouth-to-genital and hand-to-genital contact. At the pre-trial hearing, defense counsel again moved to exclude out-of-court statements by the victim, but the judge again denied the motion.

The victim, now seven, was the first witness to testify at the second trial. She again testified that Mr. Werneke had touched her genitals with his "two fingers," the crime alleged in Count II. However, after testifying on direct examination that Mr. Werneke "tried to make [her] drink the white stuff"

from his penis, she then denied that he had put his penis in her mouth or touched her with his penis anywhere. This denial was not consistent with any of her previous statements to the various witnesses or with her testimony at the first trial.

After her direct, cross, re-direct, and re-cross examinations were completed, the prosecutor took the victim, the victim's foster mother, Celia Parker, and a social worker, Lisa Brichacek, to his office. The foster mother and social worker were present for the ensuing conversation. The prosecutor told the victim that he had been surprised by her answers, explained that she was not in trouble, but said that he needed to know the truth about whether Mr. Werneke had put his penis in her mouth. The victim answered that he had, but that "she was embarrassed to talk about it around [Mr. Werneke]." She also told the prosecutor that "it was nasty or yucky or words to that effect" and that she "didn't like talking about it." The prosecutor then asked the victim whether she would go back and tell the jury the truth. She agreed to do so.

The State moved to recall the victim as a witness. Defense counsel objected, stating that he thought that due to his conduct the prosecutor was "a witness in this case" and should be disqualified, and he demanded that he be allowed to voir dire the prosecutor, the social worker, and the foster mother regarding the conversation that had just occurred in the prosecutor's office. The trial court allowed defense counsel to voir dire these three persons on the record outside the presence of the jury. The trial judge noted that Mr. Werneke would have the opportunity to call these witnesses in his case-in-chief. Defense counsel did not call or formally move to disqualify the prosecutor, however. Neither did he call or subpoena either the social worker or the victim's foster mother.

Instead, defense counsel simply objected to the State's recall of the victim as a witness. The court overruled the objection. The victim then testified that she had not told the

---

2. The victim did not testify at trial that this contact occurred. The only other evidence the State presented on this count was the testimony of Deputy Shaffer concerning what the victim

had told her, and the court found this out-of-court statement was not sufficient to make a submissible case on the issue of genital-to-genital contact.

complete truth before because she was embarrassed and that the truth was that Mr. Werneke had touched her with his penis. She testified that she could not remember which part of her body he had touched with his penis, but that she knew that he had. The State and Mr. Werneke's counsel questioned the victim about her conversation with the prosecutor.

Over defense counsel's continuing objection, the court then permitted the State to introduce the testimony of Ms. Hoehns, Ms. Dillon, Mr. Borck, Deputy Shaffer, and Dr. Scott as to the victim's out-of-court statements to them about Mr. Werneke's alleged sexual abuse. Dr. Scott also testified that the victim had behavioral indicators that were symptomatic of sexual abuse and that most sexual abuse victims were embarrassed and reluctant to discuss what had happened to them.

At the close of all the evidence, Mr. Werneke's Motion for Judgment of Acquittal was denied. The jury returned a verdict of guilty as to Count II, alleging hand-to-genital contact. The victim had not wavered in her testimony that this contact had occurred. The jury failed to reach a verdict on Count I, the count alleging mouth-to-genital contact and as to which the victim's testimony had been inconsistent. The court declared a mistrial as to Count I. Mr. Werneke moved for Judgment of Acquittal Notwithstanding the Verdict or, in the Alternative, for a New Trial. This motion was overruled and Mr. Werneke was sentenced to seven years incarceration on Count II. This appeal followed.

## II. THE ADMISSION OF HEARSAY STATEMENTS UNDER SECTION 491.075 WAS NOT AN ABUSE OF DISCRETION

■ Mr. Werneke claims that the trial court abused its discretion in admitting the victim's hearsay statements under Section 491.075 through the testimony of Ms. Hoehns, Ms. Dillon, Mr. Borck, Deputy Shaffer, and Dr. Scott. In Point I he argues that the admission of each of the victim's statements was an abuse of discretion because they lacked the required indicia of reliability and because they were shown to be unrelia-

ble by her subsequent inconsistent trial testimony. In Point II(1), he limits his claim to the admission of the hearsay testimony relevant to Count I, the sodomy charge.

■ Here, the trial court permitted introduction of out-of-court statements of the child victim pursuant to Section 491.075. Our review of the trial court's decision to admit hearsay testimony under Section 491.075 is limited to a determination of whether such admission amounted to an abuse of discretion. *State v. Redman,* 916 S.W.2d 787, 792 (Mo. banc 1996); *State v. Silvey,* 894 S.W.2d 662, 672 (Mo. banc 1995); *State v. Kelley,* 945 S.W.2d 611, 614 (Mo. App.1997); *State v. Goad,* 926 S.W.2d 152, 155 (Mo.App.1996).

Section 491.075 provides that a hearsay statement made by a child under the age of twelve who is the victim of certain sexual offenses may be admitted as substantive evidence if the court finds, after a hearing conducted outside the presence of the jury, that the "time, content and circumstances of the statement provide sufficient indicia of reliability" and the child either testifies at trial or is unavailable to testify as a witness.

■ The nonexclusive list of factors the trial court should consider when determining whether the out-of-court statements are sufficiently reliable to allow their admission includes:

(1) Spontaneity and consistent repetition; (2) mental state of the declarant; (3) lack of motive to fabricate, and ... (4) use of terminology unexpected of a child of similar age.

*Redman,* 916 S.W.2d at 790, *citing Idaho v. Wright,* 497 U.S. 805, 821, 110 S.Ct. 3139, 3149–50, 111 L.Ed.2d 638 (1990). Such "particularized guarantees of trustworthiness" are required because statements admitted under this statute are not within a firmly rooted exception to the hearsay exclusionary rule. *Id., citing Wright,* 497 U.S. at 815–23, 110 S.Ct. at 3146–51.

We cannot agree with defendant's argument that the trial court's decision that the statements were admissible under Section 491.073 was an abuse of discretion. The record shows that the trial court properly

held a pre-trial hearing on January 24, 1996, to determine whether the statements the victim made to Ms. Hoehns, Ms. Dillon, Mr. Borck, Deputy Shaffer, and Dr. Scott were sufficiently reliable to be admissible under the statute. The court concluded that there was "sufficient and ample indicia of the reliability and trustworthiness of the witnesses [sic] statements to allow such statements to be admissible" under Section 491.075. In explaining its decision, the court found that the statements were virtually spontaneous, that they were made with unusual consistency, and that they were in no way coerced nor the product of leading questions or improper interview techniques. The hearing offered little if any evidence of a motive to fabricate, the child's statements were found to be accompanied by significantly telling language and demonstrative evidence, and the interviewers were experienced and trained. The record fully substantiates these determinations. *Cf. Redman*, 916 S.W.2d at 791; *Kelley*, 945 S.W.2d at 615; *State v. Worrel*, 933 S.W.2d 431, 435 (Mo.App.1996).

■ Mr. Werneke also argues on appeal that the testimony of the child victim at trial was so inconsistent with itself and with her pre-trial statements that it negated the reliability of her pre-trial statements and rendered them inadmissible under the statute. We, therefore, review the victim's testimony at trial to determine whether it supports this argument.

First, we disagree with Mr. Werneke that *State v. Pierce*, 906 S.W.2d 729 (Mo.App. 1995), requires exclusion of a victim's out-of-court statements if she gives inconsistent in-court testimony. To the contrary, *Pierce* held that the hearsay statements of an alleged fourteen-yearold victim made to a Department of Family Services worker, which the victim completely recanted both before trial and at trial, *were* admissible as substantive evidence. *Id.* at 734–37. *Pierce* simply recognized that such out-of-court statements were not sufficient in and of themselves to make a submissible case, where the victim recants and there is no other evidence of the charged offense at trial.

Unlike *Pierce*, in the present case, Dr. Scott testified that the behavioral indicators and the physical findings were consistent with the acts that the victim had described, and the victim herself initially testified at trial that Mr. Werneke had performed the act alleged in Count II. Further, after she completed her initial testimony, she was recalled and affirmed that Mr. Werneke had touched her with his penis, but said she could no longer remember where he had touched her. It was only then that the court admitted the victim's out-of-court statements as to the fact that the victim had told witnesses that Mr. Werneke had placed his penis in her mouth.

■ Although the victim's testimony at trial was not completely consistent with her pre-trial statements, our courts have noted that in cases involving such young victims and sensitive and embarrassing subject matters " 'it is common for the testimony of a victim of tender years to contain some variations, contradictions or lapses in memory.' " *Kelley*, 945 S.W.2d at 615, *quoting State v. Helmig*, 924 S.W.2d 562, 565 (Mo.App.1996). The legislature has also recognized the likelihood that testifying at trial, a public forum with the alleged perpetrator present, may be too much for a young victim by passing legislation that allows for hearsay statements to be admitted even when the child does not testify if the judge finds that "significant emotional or psychological trauma ... would result" if a child is forced to testify. § 491.075.1(2)(c). Furthermore, "inconsistent or contradictory statements by a young child relating a sexual experience does not, in itself, deprive the testimony of all probative force." *Silvey*, 894 S.W.2d at 673.

■ Even were we to believe that the victim's recanting of part of her testimony at trial so undermined her credibility on this issue that the court should not have submitted Count I to the jury, however, no prejudicial error occurred. As noted above, the jury convicted Mr. Werneke only on Count II, alleging hand-to-genital contact. Our review of the record reveals that the victim's testimony as to the hand-to-genital contact alleged in Count II remained consistent throughout her testimony and was also consistent with her pre-trial statements about

such contact. She testified that Mr. Werneke had touched her genitals with "two fingers." This is the same description of his conduct which she had given to witnesses in her out-of-court statements. Nothing about her in-court testimony rendered these out-of-court statements as to the hand-to-genital contact unreliable or inadmissible. Thus, even if the court erred in submitting the issue of mouth-to-genital contact, it appears that no prejudice could have resulted, for the court declared a mistrial on that count.

■ Mr. Werneke argues, however, that although the jury did not convict him on Count I, the evidence admitted as to Count I may have prejudiced the jury against him and led to his conviction on Count II. He, therefore, alleges he is entitled to a new trial on Count II.

We find no evidence of prejudicial error affecting Count II. To the contrary, the record affirmatively demonstrates that the jury was able to distinguish between the victim's testimony on the two counts. Its verdict showed that the jurors found the victim to be a credible witness on the allegation of hand-to-genital contact and convicted Mr. Werneke of that count, but that the jurors did not unanimously accept her testimony of mouth-to-genital contact. This difference in result on the two counts shows the jury's careful consideration of the evidence and its ability to understand that guilt on one count did not require a finding of guilt on the other count, and vice-versa. In these circumstances, we cannot say that any prejudice resulted from the trial court's admission of the victim's out-of-court statements concerning Count I, even were that ruling erroneous.

## III. TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT ALLOWED THE PROSECUTOR TO RECALL THE VICTIM TO THE WITNESS STAND

■ Mr. Werneke also argues that the trial court abused its discretion in allowing the prosecutor to recall the victim to the stand after her out-of-court conversation with the prosecutor, and asserts that the prosecutor suggested the "correct" answer to the victim during that conversation. He claims

that the conversation, thus, was an improper influence and "fundamentally unfair."

First, we note that the victim's testimony once she was recalled dealt solely with the claim of sodomy set out in Count I. Mr. Werneke was not convicted of that count. Therefore, for the reasons set out above, any error in regard to admission of evidence on this count was not prejudicial.

■ Second, and as Mr. Werneke concedes, the trial court is given broad discretion when ruling on the prosecution's motion to recall a witness. State v. Lee, 841 S.W.2d 648, 654 (Mo. banc 1992); Hollingsworth v. Quick, 770 S.W.2d 291, 296 (Mo.App.1989); State v. Perkins, 753 S.W.2d 567, 576 (Mo. App.1988); State v. Couch, 567 S.W.2d 360, 362 (Mo.App.1978). Thus, absent an abuse of discretion, the trial court's decision to allow or deny the recall of a witness will not be disturbed on review. Callicoat v. Acuff Homes, Inc., 723 S.W.2d 565, 569 (Mo.App. 1987).

Defense counsel, in the present case, voir dired the prosecutor and the two witnesses on the record concerning the prosecutor's conversation with the victim. Nothing in the answers to voir dire indicated inappropriate conduct or undue suggestiveness by the prosecutor. After listening to this voir dire, the court permitted the victim to retake the stand. She did so. Both the prosecutor and defense counsel questioned her about her conversation with the prosecutor during her recall testimony. Thus, defense counsel took advantage of the opportunity to cross-examine the victim, and the issue of the credibility of her testimony was properly before the jury. The trial court did not abuse its discretion in allowing the prosecutor to recall the victim to the stand.

## IV. THE COURT DID NOT ERR IN FAILING TO DISQUALIFY THE PROSECUTOR AS A NECESSARY WITNESS

■ Finally, Mr. Werneke claims that the trial court abused its discretion in overruling his motion to disqualify the prosecutor because the prosecutor became a necessary witness to the trial concerning his conversa-

tion with the victim after her initial testimony.

We addressed a similar claim in *State v. Walton*, 899 S.W.2d 915 (Mo.App.1995). In that case, the Chief Prosecutor testified to rebut Mr. Walton's wife's claim that Mr. Walton had not told her he was involved in a robbery and that someone had died in the process of that robbery. The Prosecutor testified that the wife had told him and the other prosecutor this during a pre-trial interview. On appeal, Mr. Walton claimed that the court erred in allowing this testimony.

We held that even though a prosecutor might be a competent witness, "the right of a prosecuting attorney to testify in a criminal case 'is strictly limited to those instances where his testimony is made necessary by the peculiar and unusual circumstances of the case. Even then, his functions as a prosecuting attorney and as a witness should be disassociated.'" *Id.* at 919, *quoting, State v. Hayes*, 473 S.W.2d 688, 691 (Mo. banc 1971), *quoting, Tomlin v. State*, 81 Nev. 620, 407 P.2d 1020 (1965). In *Walton*, we held that this standard was satisfied in that the prosecutor's testimony was necessary because no one but the two prosecutors was present at the pre-trial interview, and so no other witness could testify to the contradictory statements which Mr. Walton's wife had made. *Walton*, 899 S.W.2d at 919; *Cf. State v. Mason*, 862 S.W.2d 519, 521–22 (Mo.App.1993)(holding that before the court's denial of defense counsel's motion to withdrawal so he could testify will be error, counsel must show that he was "the only other person . . . who could testify.").

Unlike in *Walton*, here defense counsel has made no showing that the prosecutor's testimony was necessary. To the contrary, the record affirmatively shows that two persons other than the prosecutor and the victim were present when the prosecutor interviewed the victim after her initial testimony—the victim's foster mother and a social worker. Defense counsel voir dired these two witnesses and the prosecutor, but made no attempt to call these two witnesses at trial or to show why their testimony would have been inadequate. Therefore, there was no reason to disqualify the prosecutor so that he could testify.

In fact, although on appeal Mr. Werneke argues that the court erred in failing to disqualify the prosecutor as a witness, the record shows that defense counsel failed to make a formal or specific motion for disqualification after the court permitted him to voir dire the prosecutor and the other witnesses. He had earlier simply stated to the court that he thought the prosecutor and his entire office had a conflict of interest because the prosecutor would be a witness in the case. The court then permitted him to voir dire the witnesses on the record, while noting that Mr. Werneke would have the opportunity to call these witnesses in his case-in-chief. The trial then proceeded with the recall testimony of the victim. During this cross-examination, defense counsel asked the victim about her conversation with the prosecutor. Following this exchange, Mr. Werneke did not call the prosecutor (or the other witnesses to the conversation) as a witness, nor did he move to disqualify the prosecutor so that he could do so. In these circumstances, the trial court did not err in failing to disqualify the prosecutor. *Cf. State v. McElroy*, 894 S.W.2d 180, 185 (Mo.App.1995) (objection which lacks clarity, definitiveness and specificity does not preserve point on appeal); *State v. Emmons*, 595 S.W.2d 792, 796 (Mo.App.1980).

For all of these reasons, we affirm the conviction.

All concur.