**STATE of Missouri, Respondent,**

v.

**Frankie R. REDMAN, Appellant.**

**Frankie R. REDMAN, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 78380.

Supreme Court of Missouri,
En Banc.

Feb. 20, 1996.

Rehearing Denied March 26, 1996.

Henry Robertson, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Fernando Bermudez, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERTSON, Judge.

The rule against hearsay to the contrary notwithstanding, section 491.075.1(1), (2)(a), RSMo 1994, admits as evidence testimony concerning out-of-court statements made by a child under the age of twelve who is the alleged victim of sexual abuse to prove the truth of the matter asserted in the child's statement if the trial court finds "that the time, content and circumstances of the statement provide sufficient indicia of reliability" and "[t]he child testifies at the proceedings." *Id.*

In *Idaho v. Wright*, 497 U.S. 805, 821, 110 S.Ct. 3139, 3149, 111 L.Ed.2d 638 (1990), the United States Supreme Court upheld an Idaho statute similar to section 491.075 against a Sixth Amendment Confrontation Clause challenge. In so doing, the Supreme Court wrote that "use of terminology unexpected of a child of similar age" is one indicator of the content-reliability of a child's out-of-court statement. Perhaps as a result of the Supreme Court's verbiage, the districts of the court of appeals of this state have focused their content-reliability analysis under section 491.075 on the particular words used by the child, but not under a consistent analytical construct. For example, *State v. Murray*, 838 S.W.2d 83, 86 (Mo.App.1992), holds that the absence of adult language also indicates the absence of adult coaching and renders the child's statement content-reliable. To the contrary, *State v. Jefferson*, 818 S.W.2d 311, 312 (Mo.App.1991), finds that the use of "words not expected of a child of three" renders the statement reliable.

We granted transfer to consider the issue raised by the conflicting application of *Idaho v. Wright*. We have jurisdiction. Mo. Const. art. V, § 10. We hold that in assessing content-reliability, courts should not place undue emphasis on the particular vocabulary used by a child but must determine whether knowledge of the subject matter described by the child is unexpected of a child of similar age.

The judgments are affirmed.

## I.

The facts are sordid.

"K" is the adopted daughter of appellant. The events in question happened approximately eight months prior to trial. At the time of trial, K was ten years old. She testified at the trial.

According to K's testimony, K and her sister were sleeping in a mobile home belonging to appellant's uncle, Jerry Cooper, on May 6, 1992. K testified that while she and her sister slept, "[m]y dad went in there and he sucked my boobs." The prosecutor asked K, "Is that what an adult would call a breast?" K answered, "Yes." K testified that this occurred several times one night. K further testified that during a car ride the next day, defendant "felt my boobs."

K was also questioned about events that occurred at her home on the Wednesday night following the trip to Cooper's, May 6, 1992. She testified that after her mother went to work (her mother worked nights), appellant came to her bedroom and took her into the living room of their house. Appellant told her he wanted her to watch television. She gave the following testimony:

Q. (Prosecutor) What happened next?

A. He asked me to suck his pee-pee.

Q. Now, [K], you just said pee-pee. Would that be what an adult would call a penis?

A. Yes.

She also testified that appellant offered her bribes—a dollar and a "troll doll." She said that at first she "kept quiet and didn't say anything" but after appellant persisted, she "finally gave up" and "[s]ucked his pee-pee." The prosecutor asked what happened next and K testified that "[s]omething got caught in my throat" and she then "[w]ent to spit it out and went to bed."

K's mother testified that on the following Friday, May 8, K's sister told K's mother "that Daddy had put his hand on [K's] bottom." When K's mother asked K about what K's sister had said, K responded that appellant "didn't do that." K's mother questioned K further and K told her about the incidents at Cooper's. Later that evening, after K and her sister had gone to bed, K's mother testified that she woke K and asked her if there

was anything else K wanted to tell her. K's mother testified that K said appellant "asked her to suck on his thing, or pee-pee, what [K] calls it." K's mother also said that K told her that defendant said what happened was to be a secret—that K was not to tell K's mother.

On Sunday, May 10, K's mother called the Division of Family Services (DFS) child abuse hot line number and reported the incident. On Monday, May 11, K's mother went to the DFS office and met with Ruku Young, a social worker. After K's mother talked to Ms. Young, the two of them, accompanied by Deputy Sheriff Rick Williams, went to K's school. While Officer Williams and K's mother were present, Young interviewed K.

Young testified about her interview with K and stated that K told her about the incidents at Cooper's. Young testified that K said appellant "came and sucked her right titty." Young indicated that those were the exact words K used. Young further testified that K said "she was sitting in the back seat next to Frank Redman, and he put his hand on her bra—on her breast underneath her bra." Young also related her conversation with K about what occurred on May 6, at K's home. Young explained that K said appellant woke her up, took her to another room "and asked her to suck his private parts." Young testified that K said appellant "pestered her about thirty times before she gave in" and that appellant offered K a dollar to do what he asked. Young said Officer Williams asked K if appellant said anything about telling someone. Young recalled K's answer to be that appellant told K "it was a secret."

Officer Williams testified to essentially the same facts. Williams testified that K said appellant came into the bedroom, pulled her nightgown down "and sucked on her breast." Williams did not remember if K used the word "breast."

The trial court relied on section 491.075 to admit the testimony of K's mother, Young and Williams concerning K's out-of-court statements. A jury found appellant guilty and the trial court sentenced him to forty years' imprisonment as a persistent sexual offender. §§ 566.060, 558.018, RSMo 1994.

On appeal, the southern district affirmed, finding that the child's use of "age-appropriate" language to describe sexual organs was one factor, among others, supporting the trial court's decision to admit testimony concerning K's statements.

## II.

Section 491.075 provides:

1. A statement made by a child under the age of twelve relating to an offense under chapters 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissable by statute or court rule, is admissable in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) testifies at the proceedings. . . .

## A.

■ The United States Supreme Court has ruled that hearsay testimony concerning a child's statement admitted under the authority of statutory hearsay exceptions similar to section 491.075 does "not share the same tradition of reliability" as do the "firmly rooted" hearsay exceptions. *Idaho v. Wright*, 497 U.S. at 815–19, 110 S.Ct. at 3147–8. Therefore, the Confrontation Clause requires exclusion of a child's out-of-court statement, "unless an affirmative reason, arising from the circumstances in which the statement was made, provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial." *Id.* at 819–23, 110 S.Ct. at 3149–50.

While *Idaho v. Wright* did not articulate a rigid test for determining when a child's out-of-court statement is "trustworthy," the Supreme Court noted that "[t]he state and federal courts have identified a number of factors that we think properly relate to whether hearsay statements made by a child witness in child sexual abuse cases are reliable."

*Idaho* at 821, 110 S.Ct. at 3150. The listed nonexclusive factors include: (1) spontaneity and consistent repetition; (2) mental state of the declarant; (3) lack of motive to fabricate; and, most importantly for our purposes; (4) use of terminology unexpected of a child of similar age. *Id.* Missouri has incorporated the Supreme Court's test noting that "[t]he language of § 491.075 mirrors th[e] [United States] constitutional parameters by requiring a showing that the 'time, content, and circumstances of the statement provide sufficient indicia of reliability'...." *State v. Wright,* 751 S.W.2d 48, 52 (Mo. banc 1988).

As the precis to this opinion indicates, the phrase "use of terminology unexpected of a child of similar age" is susceptible to more than one meaning. It may mean that a child's statement is reliable when the vocabulary—the precise words—used by the child to describe the sexual abuse is "age-appropriate," i.e., words that a child of that age would be expected to use. *See State v. McGuire,* 892 S.W.2d 381, 385 (Mo.App. 1995); *State v. White,* 873 S.W.2d 874, 877 (Mo.App.1994). It may also mean that a child's statement is reliable when the vocabulary—the precise words—used by the child to describe the sexual abuse is not "age-appropriate," i.e., words that a child of that age would not be expected to use. *State v. Jefferson,* 818 S.W.2d 311, 312 (Mo.App. 1991).

Defendant, citing *Jefferson,* argues the trial court erred in admitting the testimony of K's mother, Young and Williams concerning K's out-of-court statements because K used "age-appropriate" vocabulary. The state takes the opposite view.

### B.

■ *Idaho v. Wright* relies in part on *State v. Sorenson,* 143 Wis.2d 226, 421 N.W.2d 77, 85 (1988), for part of its content-reliability analysis. *Sorenson* held that when assessing reliability, the content of the statement must be examined to determine if "the statement reveals a *knowledge of matters* not ordinarily attributable to a child of similar age." *Sorenson,* 421 N.W.2d at 85. [Emphasis added.] *Sorenson* found the seven-year-old victim's out-of-court statement reliable because the child's "description of specific incidents of sexual assault, her familiarity and crude terminology for sexual organs, and her demonstration of the act ... with anatomically-correct dolls established knowledge well beyond the ordinary familiarity of a child her age." *Id.* at 86.

*Sorenson's* focus, which we think is correct, is on the child's knowledge and familiarity with sexual organs and sexual acts, rather than the exact vocabulary the child uses to describe them. *Sorenson* reasoned that "[a] young child is unlikely to fabricate a graphic account of sexual activity because it is beyond the realm of his or her experience." *Id.* The Supreme Court, while using the phrase *"terminology* unexpected of a child of similar age," must surely have meant that courts must focus on the statement's subject matter, not the words chosen to describe events themselves. We reach this conclusion because *Idaho v. Wright* also says: "The nature of the statements as to sexual abuse are such that they fall outside the general believability that a child could make them up or would make them up." "This is simply not the type of statement ... that one would expect a child to fabricate." *Idaho,* 497 U.S. at 825, 110 S.Ct. at 3152.

Further, an age-appropriate, vocabulary-driven standard for determining content-reliability is unworkable. First, a particular child's verbal skills and word choices are the product of various cultural and social influences, in which parents, siblings, friends, and the entertainment media all play a role. Consequently, the particular words used by a particular child mean little when considering content reliability, since different children, even of the same age, will use different words—depending on their family experiences and their socialization—to describe the same sexual organs or sexual acts. Furthermore, whether a word is or is not "age-appropriate" requires appellate courts to consider hairsplitting questions of fact or take judicial notice of an ill-fitting, laundry-list of "appropriate" words. Neither choice is consistent with acceptable jurisprudential manners or a desire to assist trial courts in making these difficult evidentiary decisions.

We hold, therefore, that when assessing content-reliability, courts must examine whether the child's knowledge of the subject matter, rather than the child's particular vocabulary or words, is unexpected in a child of similar age. To the extent prior decisions depart from this standard, they are overruled.

### C.

■■■ Our review of the trial court's decision in this case to admit K's out-of-court statements is limited to a determination of whether the decision amounted to an abuse of discretion. *State v. Young,* 701 S.W.2d 429 (Mo. banc 1985), *cert. denied,* 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 *rehearing denied,* 478 U.S. 1014, 106 S.Ct. 3322, 92 L.Ed.2d 729. K's description of the act of sodomy, regardless of the particular words she used to describe anatomy and function, indicates knowledge of a sexual subject matter that is beyond the ken of a typical ten-year-old. Moreover, other factors support reliability. K related the incidents voluntarily, without prompting, shortly after they occurred. She consistently told the same story to her mother, Young and Williams. No motive for prevarication or fabrication was disclosed. There was no indication that K suffered from emotional trauma or that she was mentally distraught. All these factors together indicate the statements had "sufficient indicia of reliability." § 491.075. The trial court did not abuse its discretion in admitting testimony concerning K's out-of-court statements.

### III.

### A.

■■■ In his second point,[1] appellant claims the trial court's decision to admit the testimony of K's mother, Young and Williams concerning the same interview with K conflicts with *State v. Seever,* 733 S.W.2d 438, 441 (Mo. banc 1987), because the testimony was duplicative and unfairly bolstered the child's testimony. *Seever* held it was improper bolstering for the prosecution to first introduce the victim's videotaped statement and then subsequently to call the victim to the stand to testify because "the testimony covered the same precise ground." *Id.* Here the testimony was not entirely duplicative. Each witness testified to his or her own recollection of K's statement and the circumstances surrounding the interview. The testimony supported the consistency of K's statement and, therefore, had probative value apart from K's out-of-court statement. *State v. White,* 873 S.W.2d at 877. The point is denied.

### B.

■■■ Appellant's third point is directed to the state's closing argument. Appellant contends the trial court erred in overruling two motions for mistrial because the prosecutor's closing argument made indirect reference to appellant's failure to testify. During closing argument, the prosecutor argued that there was no showing that K had any reason to lie about what happened. The prosecutor stated that the jury did not hear "from this stand ... one single reason why this girl would perpetuate this thing, except that it happened." Later in his argument, the prosecutor told jurors they should find defendant guilty based on K's testimony at trial—on what they heard in the courtroom "as evidence from the stand."

■■■ Defendants in criminal cases are guaranteed the right not to testify. Comments, direct or indirect, on a defendant's failure to testify are forbidden. *State v. Parkus,* 753 S.W.2d 881, 885 (Mo. banc 1988), *cert. denied,* 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 237 (1988). It is permissible, however, for a prosecuting attorney to argue the effect of evidence presented and the reasonable inferences drawn from the evidence. *State v. Pate,* 859 S.W.2d 867, 871 (Mo.App. 1993). A prosecutor may argue that evidence is uncontroverted or uncontradicted. *State v. Laws,* 854 S.W.2d 633, 637 (Mo.App. 1993).

■■■ It is doubtful that the arguments about which appellant complains could be

---

1. Part III is adopted from the opinion of The Honorable John E. Parrish, Judge of the Missouri Court of Appeals, Southern District.

construed as indirect comments on his failure to testify. However, even assuming that the statements could be construed to be indirect comments on his failure to testify, they were permissible unless, by reason of a calculated intent on the part of the prosecutor, they magnified appellant's decision not to testify so as to call that decision to the jury's attention. *State v. Lawhorn,* 762 S.W.2d 820, 826 (Mo. banc 1988). If a comment demonstrates a calculated intent by the prosecutor to draw attention to a defendant's failure to testify, it warrants reversal. *State v. Morin,* 873 S.W.2d 858, 870 (Mo.App.1994).

■ The trial court, being in the better position to ascertain the effect of the argument, had wide discretion in overruling appellant's requests for a mistrial. *State v. Stevenson,* 852 S.W.2d 858, 863 (Mo.App. 1993). The trial court's determination is error only if it amounts to an abuse of discretion. *State v. Shurn,* 866 S.W.2d 447, 460 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994).

Obviously, the trial court determined the arguments were either not indirect comments on appellant's failure to testify or, if they were, that there was no calculated intent on the part of the prosecuting attorney to draw attention to appellant's failure to testify. The trial court did not abuse its discretion in overruling appellant's motions for mistrial.

### C.

■ Appellant's final two points are directed to the motion court's order denying his Rule 29.15 motion. Point IV complains that the trial court erred in denying appellant's motion because the state, in selecting a jury, exercised gender bias by peremptorily striking five men from the list of prospective jurors. Point IV attempts to raise a trial error. *See Stallings v. State,* 784 S.W.2d 862, 863 (Mo.App.1990). Generally, trial errors are not cognizable in a post-conviction proceeding.

Post-conviction motions cannot be used as a substitute for direct appeal or to obtain a second appellate review. *Clemmons v. State,* 795 S.W.2d 414, 417 (Mo. App.1990); *Camillo v. State,* 757 S.W.2d 234, 239 (Mo.App.1988). If the allegations

of trial error are constitutional violations, they are not cognizable unless exceptional circumstances are shown which justify not raising the constitutional grounds on direct appeal. *Clemmons,* 795 S.W.2d at 417. *State v. Clark,* 859 S.W.2d 782, 789 (Mo.App. 1993).

■ Appellant's trial attorney testified at the evidentiary hearing on appellant's Rule 29.15 motion. He was asked if, at the time of trial, he believed there were discriminatory motives behind the state's exercise of its peremptory strikes. He answered, "No, I didn't." This Court finds no exceptional circumstances that require reconsideration of this issue in appellant's appeal from the motion court's denial of his Rule 29.15 motion.

■ Point V argues that the motion court erred in denying appellant's Rule 29.15 motion on his ineffective assistance of counsel claim. Appellant alleged his attorney was ineffective for failing to object to the state's discriminatory use of peremptory strikes to remove male jurors. The motion court found:

A review of the transcript herein of the voir dire portion of the trial clearly indicates that there was no systematic exclusion of male venirepersons from the jury and that in fact, seven of the twelve jurors were male. That all of the peremptory strikes of the male venirepersons were made due to their responses to questions put to the panel of venirepersons during the voir dire.

■ Failure to seek unwarranted relief does not constitute ineffective assistance of counsel. *State v. Woods,* 861 S.W.2d 326, 333 (Mo.App.1993). A review of the record on appeal reveals that the motion court's finding is not clearly erroneous. Rule 29.15(j). The points are denied.

### IV.

The judgment of conviction is affirmed. The judgment overruling defendant's Rule 29.15 motion is affirmed.

All concur.