STATE of Missouri, Respondent,

v.

Jerrold K. WORREL, Appellant.

No. WD 51417.

Missouri Court of Appeals,
Western District.

Nov. 5, 1996.

Richard "Jake" Jacoby, Yonke, Arnold, Newbold & Regan, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, Philip M. Koppe, Assistant Attorney General, Kansas City, for respondent.

Before EDWIN H. SMITH, P.J., and BRECKENRIDGE and ELLIS, JJ.

BRECKENRIDGE, Judge.

Jerrold K. Worrel appeals from a conviction of sexual abuse in the first degree, § 566.100.1(2), RSMo Cum.Supp.1993. Mr. Worrel contends that the trial court erred by allowing the State to introduce out-of-court statements by the victims, by allowing the State to cross-examine him about prior uncharged sex crimes pursuant to § 566.025, RSMo 1994, and by failing to declare a mistrial after the prosecutor made allegedly improper remarks during closing argument. Mr. Worrel also claims that there was insufficient evidence to support the conviction because there was no proof that he touched the victim for the purpose of arousing or gratifying sexual desire.

The trial court erred in admitting evidence of prior uncharged sex crimes and Mr. Worrel was prejudiced thereby. The judgment is reversed and the cause remanded.

On July 22, 1993, Mr. Worrel and his two grown daughters were conducting a garage sale at Mr. Worrel's home in Oak Grove, Missouri. Also present were his grandson, seven-year-old J.B., and a neighbor boy, six-year-old S.A. That morning, as she stood in the doorway to Mr. Worrel's bedroom, one of

Mr. Worrel's daughters saw S.A. lying on the bed and playing a video game while Mr. Worrel stood over him. This daughter observed that Mr. Worrel was tickling S.A. on the inner thighs, close to his genitals.

This incident prompted Mr. Worrel's two daughters to take S.A. aside and ask him if their father "had touched him in any way that made him feel uncomfortable." S.A. responded in the affirmative, indicating that Mr. Worrel had touched him in the genital area and the buttocks.

S.A. then walked home, accompanied by J.B. There, S.A. told his father that Mr. Worrel had pinched him on "his thing" and on "the butt." S.A.'s father asked J.B. if this was true, and J.B. replied that Mr. Worrel had pinched S.A. "on the privates, and on the butt." S.A.'s father then called the Jackson County Sheriff's Department, and asked them to send an officer to his home. A sheriff's deputy arrived and questioned the boys, and J.B. told the deputy that Mr. Worrel had said that he could tell if J.B. was lying if J.B. "got a hard-on."

On July 23, 1993, Judy Ross, who was a detective sergeant with the Jackson County Sheriff's Department, interviewed both boys separately at her office. When Sergeant Ross interviewed J.B., he told her that, while he was visiting his grandfather's house, Mr. Worrel "swatted him across the wee-wee with his hand" and told him that "if he told a lie his wee-wee would get hard." J.B. also told Sergeant Ross that the same thing had happened to S.A.

When Sergeant Ross interviewed S.A., he told her that Mr. Worrel touched "his private." When Sergeant Ross asked S.A. what he meant by his "private," S.A. pointed to what Sergeant Ross described as "the front part of his body, or his genital area." S.A. told Sergeant Ross that this had occurred three times on the day before, in the downstairs, kitchen, and upstairs bedroom of Mr. Worrel's house. S.A. also told Sergeant

Ross that Mr. Worrel had not been trying to tickle him.

Mr. Worrel was charged under § 566.100.1(2), RSMo Cum.Supp.1993, with one count of sexual abuse in the first degree in connection with his actions on July 22, 1993 involving J.B., and one count of sexual abuse in the first degree in connection with his actions on July 22, 1993 involving S.A. Under the version of § 566.100.1(2) that was in effect on July 22, 1993, the crime of sexual abuse in the first degree is committed if a person subjects another person who is less than twelve years old to sexual contact.[1] The definition of sexual contact as of the date of the crimes charged was "any touching of the genitals or anus of any person, or the breast of any female person, or any such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person." Section 566.010(3), RSMo Cum.Supp.1993.[2]

J.B, S.A., S.A.'s father, Mr. Worrel's two daughters, and Sergeant Ross testified at Mr. Worrel's trial, and recounted the events described above. In addition, one of Mr. Worrel's daughters testified that, in June of 1993, she went to her father's house and saw Mr. Worrel sitting in a chair with S.A. in his lap. According to the daughter, Mr. Worrel had his hands on the boy's buttocks, down toward the testicles, and he was "kind of tickling and massaging, in a way, and caressing" the boy's buttocks. When Mr. Worrel saw that his daughter was watching, he jerked his hand away from the boy's buttocks.

Mr. Worrel also testified at trial, and acknowledged that it was possible that he had tickled S.A. on July 22, 1993, but he also insisted that he did not do so for sexual gratification. Then, on cross-examination, after overruling Mr. Worrel's objection, the trial court allowed the State to question Mr. Worrel regarding a questionnaire he had completed in 1988 while receiving counseling

---

1. In 1994, § 566.100 was amended and one change was that subdivision (2) of subsection 1 was eliminated from the statute.

2. The definition of sexual contact was amended in 1994 to provide that sexual contact is "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, for the purpose of arousing or gratifying sexual desire of any person." Section 566.010(3), RSMo 1994.

from the Metropolitan Organization to Counter Sexual Assault (MOCSA).

Specifically, Mr. Worrel was asked whether he had marked the following two statements on the 1988 MOCSA questionnaire as true: (1) that he had manipulated a child to get sexual pleasure, and (2) that, at times, when he had hugged or held a child, he had become sexually aroused. When asked about the first item, Mr. Worrel said, "Yes, I admit that." When asked about the second item, Mr. Worrel said, "I can't remember, but it's possible I did."

At the close of trial, the jury found Mr. Worrel guilty of the count involving S.A., and acquitted him of the count involving J.B. Mr. Worrel was sentenced to a five-year term of imprisonment.

In his first point on appeal, Mr. Worrel claims that the trial court erred by allowing the State to introduce into evidence, pursuant to § 491.075, RSMo 1994, the out-of-court statements which S.A. and J.B. made to Mr. Worrel's daughters, S.A.'s father, and Sergeant Judy Ross. Mr. Worrel contends that the boys' statements were not sufficiently reliable to be admitted as exceptions to the hearsay rule because they were the result of leading questions by Mr. Worrel's daughters, and of an improper method of questioning on the part of the sheriff's deputy, who interrogated both boys together.

Enacted to provide an exception to the exclusionary rules of evidence, § 491.075 permits witnesses to testify as to statements made by children under the age of twelve, even when those statements constitute otherwise inadmissible hearsay. *State v. Howton,* 890 S.W.2d 740, 746 (Mo.App.1995). Section 491.075 reads, in pertinent part:

> 1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as

substantive evidence to prove the truth of the matter asserted if:

> (1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

> (2)(a) The child testifies at the proceedings. . . .

As required by the statute, the trial court held such a hearing before allowing Mr. Worrel's daughters, S.A.'s father, and Sergeant Ross to testify concerning the out-of-court statements made by J.B. and S.A.

To determine if a child's out-of-court statement possesses "sufficient indicia of reliability" for the purposes of § 491.075, Missouri courts have adopted a totality of the circumstances test which includes the consideration of a number of non-exclusive factors taken from *Idaho v. Wright,* 497 U.S. 805, 821, 110 S.Ct. 3139, 3150, 111 L.Ed.2d 638 (1990): (1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) the lack of a motive to fabricate; and (4) knowledge of subject matter unexpected of a child of similar age.[3] *State v. Redman,* 916 S.W.2d 787, 790–91 (Mo. banc 1996). This court's review of a trial court's decision to admit out-of-court statements under § 491.075 is limited to a determination of whether the decision amounted to an abuse of discretion. *Id.* at 792.

Mr. Worrel argues that the out-of-court statements of J.B. and S.A. lacked spontaneity because they were precipitated by leading questions when Mr. Worrel's daughters asked S.A. if Mr. Worrel "had touched him in any way that made him feel uncomfortable." But this question, while directing the child to an area of inquiry, did not suggest any specific act or phrase the question to get a particular response, and therefore was not leading. *See State v. Russell,* 872 S.W.2d 866, 873 (Mo.App.1994);

---

**3.** Although *Idaho v. Wright* used the phrase "use of terminology unexpected of a child of similar age," the *Redman* court determined that a test based upon age-appropriate vocabulary is unworkable, and that the standard should be whether the child has a knowledge of subject matters not ordinarily attributable to a child that age. *State v. Redman,* 916 S.W.2d 787, 792 (Mo. banc 1996).

*State v. Fraction,* 782 S.W.2d 764, 767 (Mo. App.1989).

Mr. Worrel also claims that the out-of-court statements made by J.B. and S.A. should have been excluded because the sheriff's deputy who responded at the scene questioned the boys together. Although, as Mr. Worrel notes, Sergeant Ross testified that it was a better practice to interview them separately, upon consideration of the time, content, and circumstances of the boys' out-of-court statements, this court is unable to say that the trial court abused its discretion in ruling that the statements possessed sufficient indicia of reliability. The statements to the various witnesses were consistent, there was no evidence of either a motive to fabricate or of a problem with the boys' mental state, and there was not an unusually long period between the time of the occurrences and the boys' statements. *State v. Gill,* 806 S.W.2d 48, 53–54 (Mo.App.1991). In addition, Sergeant Ross was experienced in questioning child victims of sexual abuse, which is a legitimate factor in determining reliability. *State v. Walker,* 903 S.W.2d 636, 640 (Mo. App.1995). Point denied.

In his second point on appeal, Mr. Worrel claims that the trial court erred by allowing the State to cross-examine him about the MOCSA questionnaire he had completed in 1988. In proposing to use the MOCSA records to cross-examine Mr. Worrel, the prosecutor stated that the records were admissible under § 566.025, which provides that:

> In prosecutions under chapter 566 or 568 involving a victim under fourteen years of age, whether or not age is an element of the crime for which the defendant is on trial, evidence that the defendant had committed other charged or uncharged crimes involving victims under fourteen years of age shall be admissible for the purpose of showing the propensity of the defendant to commit the crime or crimes with which he is charged, provided that such evidence involves acts that occurred within ten

years before or after the act or acts for which the defendant is being tried.

■■■ Generally, evidence of prior bad acts committed by a defendant is inadmissible to establish the defendant's guilt of the present charge. *State v. Sladek,* 835 S.W.2d 308, 311 (Mo. banc 1992). Courts in this state have long recognized that such evidence possesses a "dangerous and misleading probative force" with significant prejudicial effect because it tends to persuade the jury to convict a defendant based on prior actions. *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954). Section 566.025, however, is a legislative determination that the probative value of prior sexual acts toward children under the age of fourteen outweighs its prejudicial effect, so long as the conduct occurs within ten years of the presently charged offense. *See State v. Sexton,* 890 S.W.2d 389, 391 (Mo.App.1995).

Mr. Worrel contends that the trial court misapplied § 566.025 by allowing the State to cross-examine him about his statement, in response to the MOCSA questionnaire, that he had manipulated a child to get sexual pleasure.[4] Mr. Worrel complains that the statement refers to uncharged sex acts which occurred more than ten years before the acts for which he was on trial, and was therefore inadmissible under the statute. Mr. Worrel claims that the uncharged sex acts which Mr. Worrel was alluding to in responding to the questionnaire was the alleged sexual molestation of his daughters approximately twenty-six years prior to the charged incidents. The State, on the other hand, claims that the statement refers to the alleged sexual molestation of his grandson near the time he received treatment from MOCSA in 1988.

■■■ For consideration by the court in ruling on admissibility, the entire MOCSA questionnaire was admitted into evidence as part of a series of treatment records and notes which MOCSA had prepared as part of the counseling that it provided to Mr. Worrel in 1988. The MOCSA records indicate that Mr. Worrel agreed to attend counseling sessions

---

4. Mr. Worrel's argument under his point relied on focuses entirely on the statement concerning manipulation, and does not discuss his statement that at times when he hugged or held a child, he

became sexually aroused. Therefore, our analysis of this point will address only the statement concerning manipulation.

at the urging of his daughters after his recent behavior with a grandson had raised concerns. According to the MOCSA intake form, Mr. Worrel "tickled grandson on the penis and daughter saw it." Another MOCSA record stated that Mr. Worrel denied molesting his grandson, and that Mr. Worrel claimed he was changing his grandson's diapers and his daughter mistakenly thought that he was molesting him.

The State argues that, in light of these records, Mr. Worrel's questionnaire response that he had "manipulated a child to get sexual pleasure" could reasonably have been interpreted as referring to the incident involving his grandson. Therefore, the State concludes, the statement was admissible under § 566.025 because the act alluded to occurred within ten years of the crimes on which he was tried.

A review of the MOCSA records does not support a finding that Mr. Worrel's statement referred to an act occurring within ten years of the alleged sexual abuse of S.A. and J.B. During the entire time that Mr. Worrel was receiving treatment of MOCSA, the only child molestation which he admitted involved his two daughters and a niece and occurred about twenty years before 1988. He denied molesting anyone since that time, and particularly denied molesting his grandson in 1988 or thereabouts. The only reasonable inference which can be made from the records is that, in Mr. Worrel's answer to the MOCSA questionnaire, he was referring to his conduct in approximately 1968. This is well beyond the ten-year requirement of § 566.025.

■■■ This court's ruling that Mr. Worrel's statement is not admissible under § 566.025 does not conclude our inquiry, as a trial court's ruling on the admissibility of evidence will be upheld if it is sustainable on any theory. *State v. Christian,* 847 S.W.2d 179, 181 (Mo.App.1993). At trial, the prosecutor also argued that Mr. Worrel's statement that he manipulated a child to get sexual pleasure was independently admissible under the common law rules for the purpose of showing intent. Evidence of other, uncharged misconduct is admissible if it tends to establish motive, intent, identity, the

absence of mistake or accident, or a common scheme or plan. *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993). When evidence qualifies for one of these common law exceptions to the general rule requiring exclusion, the trial court may admit the evidence if it determines that the evidence's probative value outweighs its prejudicial effect.

■■■ In order for intent to serve as the basis for admission of evidence of other, uncharged misconduct, it is necessary that intent be a legitimate issue in the case. *State v. Conley,* 873 S.W.2d 233, 237 (Mo. banc 1994). Here, the State was required to prove that Mr. Worrel subjected A.S., who was under twelve years old, to sexual touching for the purpose of arousing or gratifying Mr. Worrel's sexual desires. Sections 566.100 and 566.010(3).

In his testimony at trial, Mr. Worrel did not dispute, except for some particulars, the physical contact which the boys described. Instead, he insisted that he did not have the necessary criminal intent, i.e., that he did not touch the boys for the purpose of arousing or gratifying his sexual desire. Therefore, the matter of his intent was a genuine issue in this case.

Nevertheless, Mr. Worrel's statement on the MOCSA questionnaire is not admissible for the purpose of establishing intent under the holding of *Conley,* 873 S.W.2d 233. The Missouri Supreme Court, in *Conley,* requires that the acts of uncharged sexual misconduct be sufficiently similar to the acts charged. 873 S.W.2d at 237.

In *Conley,* the defendant was a child care worker in a home for boys who was charged with fifty-one counts involving the sexual abuse of young males. At trial, the court admitted evidence of acts of sexual abuse which were not charged, and which involved other alleged victims. The court also instructed the jury that it could consider the evidence of uncharged misconduct against other young males as part of the traditional common scheme or plan exception. The Missouri Supreme Court found this instruction to be erroneous, reversed the convictions,

and remanded the case for a new trial. *Id.* at 236.

In *Conley,* the State argued on appeal that, while inadmissible under the common scheme or plan exception, the evidence of uncharged misconduct was nevertheless admissible on the issue of intent. At trial, the defendant had not attempted to make an issue of intent except in the case of one of the victims, whose penis the defendant was accused of grabbing while wrestling. *Id.* at 237. The defendant admitted using a "genital hold" on the victim while wrestling, but denied any sexual intent, apparently claiming that the hold was a karate move. *Id.* at 236.

The *Conley* court ruled that, because the defendant had made an issue of intent as to his touching of one victim while wrestling, the State could present evidence of uncharged incidents to establish intent with respect to that one victim where the defendant used the same "genital hold" on other boys while wrestling. *Id.* at 237. But the court held that the other evidence of uncharged sexual conduct, which was unrelated to wrestling, was inadmissible as evidence of intent. *Id.*

■ In short, the *Conley* court has articulated a rule that, if uncharged sexual misconduct is offered on the issue of intent, that sexual misconduct must be sufficiently similar to the charged act or acts for which the defendant is on trial. The challenged evidence, here, is a statement concerning the "manipulation" of children for sexual gratification. As a description of conduct, the term "manipulation" does not describe acts which are sufficiently similar to the charged acts in the criminal proceedings against Mr. Worrel.

■ Because Mr. Worrel's statement is inadmissible under either § 566.025 or the common law exceptions, the general rule controls and the evidence of Mr. Worrel's uncharged prior misconduct is inadmissible because its prejudicial effect outweighs its probative value. The trial court erred by allowing the state to utilize the statement in cross-examining Mr. Worrel. The erroneous admission of the statement that Mr. Worrel had manipulated children for sexual gratification was highly prejudicial, so the error

requires reversal of the conviction and remand for a new trial. *See Bernard,* 849 S.W.2d at 20. Therefore, the error requires reversal of the conviction and remand for a new trial. On retrial, the only evidence of uncharged misconduct toward other victims, which would be admissible as evidence of intent, is sexual touching sufficiently similar to the charged acts.

Mr. Worrel's remaining points are rendered moot by this court's disposition of his appeal. The judgment of the trial court is reversed, and the cause is remanded for a new trial.

All concur.