STATE of Missouri, Plaintiff–
Respondent,

v.

Elvis D. KELLEY, Jr., Defendant–
Appellant.

No. 21055.

Missouri Court of Appeals,
Southern District,
Division One.

May 15, 1997.

Emmett D. Queener, Asst. Public Defender, Columbia, for defendant–appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Becky Owenson Kilpatrick, Assistant Attorney General, Jefferson City, for plaintiff–respondent.

BARNEY, Presiding Judge.

Elvis D. Kelley (Defendant) was convicted by a jury on one count of the class B felony of rape under § 566.030, RSMo 1986. He was sentenced as a prior and persistent offender to thirty years of imprisonment in the Department of Corrections.

Defendant raises two points on appeal. He claims the trial court erred: (1) in admit-

ting hearsay statements of the victim because the statements did not contain sufficient indicia of reliability; and (2) plainly in admitting the testimony of Dr. Douglas Beal as Dr. Beal did not personally examine the victim but relied on the medical reports of others in forming his opinion.

The sufficiency of the evidence to support the conviction is not in dispute. Therefore, we view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict. *See State v. Crews,* 923 S.W.2d 477, 478 (Mo.App.1996).

Defendant is the natural father of the victim, C.K.[1] The fourth amended felony information charged Defendant with committing rape in Dent County, Missouri, on or about April 5, 1992, by having sexual intercourse with C.K., to whom he was not married and who was less than fourteen years of age. At the time of the incident, C.K. was eight years old and living with Defendant.

On April 6, 1992, C.K. went to visit her mother, Linda. They saw an acquaintance, Ms. Hanson, at a restaurant in Salem, Missouri. Ms. Hanson invited them to sit with her; however, C.K. stated that she could not sit because Defendant had beaten her. Ms. Hanson took C.K. to the restroom and observed black and blue "whelps" up and down C.K.'s backside. Ms. Hanson made a hotline call to the Division of Family Services (DFS).

The following day, C.K. told Ms. Hanson that Defendant had "sex" with her two days ago, on April 5, 1992. Ms. Hanson stated that C.K. said she could remember the day because it was the weekend she went to visit her mother and Defendant would not let her go until she had "sex" with him. She also remembered receiving a beating around the same time for bringing home a "D" on her report card. Ms. Hanson asked C.K. what she meant by the word "sex" and C.K. said that Defendant had put his "penis" in her "vagina." She also told Ms. Hanson that this was not the only time this had happened. She stated that "he did it lots of times in

Wentzville." C.K. stated to Ms. Hanson that Defendant had put "it" in her "butt," and that sometimes he would tie her up with rope and duct tape. Ms. Hanson testified that she did not ask C.K. any questions and that C.K. told her of the events on April 5, 1992, without her having to ask.

On July 9, 1992, C.K.'s mother took her to a therapy session with Jacqueline Roberts. Ms. Roberts was unfamiliar with any of the previous allegations of abuse. After several therapy sessions, Ms. Roberts concluded that C.K. had been the victim of physical, or perhaps sexual abuse. This opinion was based on observing C.K.'s behavior which included hyperactivity, attention seeking, and lack of personal boundaries. She requested to speak with C.K. alone on August 31, 1992.

During that interview, Ms. Roberts asked C.K. if anyone had touched her in a way that made her feel uncomfortable. C.K. responded that her father had. Ms. Roberts then asked how and where, and C.K. stated that Defendant had made her bleed "down here." During this interview, C.K. also stated to Ms. Roberts that two other men had touched her inappropriately. One touched her breast and the other touched her breast and vaginal area. In a later interview with Ms. Roberts, C.K. stated that there had also been oral to genital contact with Defendant.

C.K. was taken by her mother and a DFS social worker to see Dr. Barbara Russell at the Russell–Young clinic on September 29, 1992. The purpose of the visit was for C.K. to receive a SAFE[2] exam. At the time of the pre-trial hearing, Dr. Russell was deceased. The State sought to present the notes of Dr. Russell's exam through the testimony of Dr. Katherine Cook, Dr. Russell's partner at the clinic.

Dr. Cook stated in her testimony that Dr. Russell's notes indicated that C.K. stated that Defendant had "sex" with her on several occasions by placing his "thing" or "private" in her "private." C.K. indicated that Defendant had also made her put his penis in her

---

1. We use the first names and initials of the parties involved to protect the identity of the victim. We mean no disrespect in doing so.

2. SAFE is an acronym for Sexual Assault Forensic Examination.

mouth and that Defendant put his "thing" in her "back hole." Dr. Russell was alone with C.K. when these statements were made.

The physical examination of C.K. conducted by Dr. Russell revealed that there was only a "ragged rim" of C.K.'s hymen remaining and that there was a scar from a healed laceration at the bottom end of the vaginal opening. Dr. Cook then explained that these findings are consistent with something fairly large being inserted into the vagina with "considerable force."

C.K. was also taken to see Dr. Bob Carnett on November 16, 1992, for complaints of a cough and vaginal discharge. When asked about the vaginal discharge, C.K. stated to Dr. Carnett that Defendant had "sex" with her. Dr. Carnett's examination revealed that the hymenal ring was broken and the vagina was extremely large for a child of C.K.'s age. Dr. Carnett's opinion was that C.K. had been sexually abused.

■ In his first point on appeal, Defendant contends that Dr. Cook should not have been permitted to testify as to the contents of Dr. Russell's notes as it was not proven that the statements carried a sufficient indicia of reliability. Our review of the trial court's decision to admit C.K.'s out-of-court statements under § 491.075[3] is limited to a determination of whether the decision amounted to an abuse of discretion. § 491.075.1, RSMo Cum.Supp.1991; *State v. Worrel*, 933 S.W.2d 431, 434 (Mo.App.1996); *see also State v. Redman*, 916 S.W.2d 787, 792 (Mo. banc 1996).

Section 491.075.1 permits the out-of-court statements of a child rape victim to be admitted at trial, if the "time, content and circumstances" of those statements provide "sufficient indicia of reliability," and the child victim testifies at trial or is declared unavailable. That section states:

A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not other-

wise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness.

Section 491.075.1.

A pre-trial hearing was conducted pursuant to § 491.075 to determine the reliability of statements made by C.K. to several individuals. At the conclusion of that hearing, the trial court made the decision to admit the testimony of Dr. Cook concerning statements contained in Dr. Russell's notes. The trial court stated:

The Court also finds that as to the testimony of Dr. Cook that the statements of Dr. Russell, her notes made in the ordinary course of business in the medical clinic were reliable and as to time, content and circumstances they provide sufficient indicia of reliability and the Court finds that they are admissible as substantive evidence.

In determining whether a child's out-of-court statements possess "sufficient indicia of reliability" for the purposes of § 491.075, Missouri courts have adopted a totality of the circumstances test that includes the consideration of several, non-exclusive factors. *Worrel*, 933 S.W.2d at 434. These factors include: (1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) the lack of a motive to fabricate; and (4) knowledge of subject matter unexpected of a child of similar age. *Id.*

We initially note that C.K. testified at trial and was subject to cross-examination.

■ The statements to Dr. Russell were made only five months after the charged incident of abuse. Missouri courts have held that longer time periods do not destroy the reliability of a child-victim's statements. *See State v. Whittle*, 813 S.W.2d 336, 340–41 (Mo.

---

**3.** All statutory references are to RSMo Cum. Supp.1991, unless otherwise stated.

App.1991)(just under two years); *State v. Keil*, 794 S.W.2d 289, 293 (Mo.App.1990)(almost a year); *State v. Taylor*, 735 S.W.2d 412, 414, 421 (Mo.App.1987)(several months). In addition, the incident was first reported to Ms. Hanson within two days of its occurrence and repeated to several individuals before C.K. was taken to see Dr. Russell. C.K. remained fairly consistent in her report of the events to each individual she told. Even though minor inconsistencies may have existed, "[w]e note that in cases dealing with very sensitive subjects, it is common for the testimony of a victim of tender years to contain some variations, contradictions or lapses in memory." *State v. Helmig*, 924 S.W.2d 562, 565 (Mo.App.1996). Although C.K.'s teacher testified that she was in a special education class due to her attention deficit disorder, there was no evidence presented showing that she was mentally unsound. Additionally, there was no evidence that she had any motive to fabricate her story. Finally, knowledge of the sexual acts C.K. reported is certainly not within the normal subject matter of an eight-year-old child.

■ Additionally, the particular statements about which Defendant complains were made to Dr. Russell, a pediatric physician experienced in conducting SAFE interviews and exams. Experience of the interviewer is a legitimate factor in determining reliability. *See Worrel*, 933 S.W.2d at 435. Furthermore, the interview with Dr. Russell was conducted outside the presence of C.K.'s mother and the DFS worker, thereby removing these influencing factors. Finally, many of the statements made to Dr. Russell were also made to other individuals. This lends credibility to the trial court's decision that they were reliable as to time, content and circumstances. Applying the foregoing factors to C.K.'s statements, this Court cannot say that the trial court abused its discretion in admitting the testimony of Dr. Cook regarding the contents of Dr. Russell's notes. *See Worrel*, 933 S.W.2d at 434. Point One is denied.

In his second point, Defendant contends that the trial court erred in admitting the testimony of Dr. Douglas Beal as it improperly bolstered other testimony presented at trial. Specifically, he asserts that Dr. Beal should not have been permitted to testify that, in his opinion, C.K. had been sexually abused as he only reviewed the records of other witnesses and did not personally examine the victim.

■ Although this assertion of error was raised in Defendant's motion for new trial, no objection was made at trial to the admission of Dr. Beal's testimony.

In order to preserve an evidentiary issue in a jury trial for appellate review, an objection must be made when the evidence is sought to be introduced; that objection must be asserted as error in a motion for new trial; and the issue must be presented in the appeal brief.

*State v. Guidorzi*, 895 S.W.2d 225, 228 (Mo. App.1995).

■ Because no objection was made at trial, Defendant seeks plain error review under Rule 30.20. "Relief will be granted under the plain error rule if the error so substantially affects the right of the accused that manifest injustice or miscarriage of justice inexorably results if left uncorrected." *State v. Sullivan*, 935 S.W.2d 747, 758 (Mo.App. 1996); *see also* Rule 30.20. Defendant must go beyond the mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights. *State v. Fleischer*, 873 S.W.2d 310, 314 (Mo.App.1994).

■ Our review of the record reveals that no manifest injustice or miscarriage of justice resulted in the admission of Dr. Beal's testimony. The defense utilized its cross-examination of Dr. Beal to demonstrate that he never personally examined C.K.

In *State v. Hendrix*, 883 S.W.2d 935 (Mo. App.1994), a doctor was permitted to give his opinion that the victims in that case had been sexually abused. *Id.* at 940. He based his opinion on reports from law enforcement officers and medical records relating to the investigations of alleged abuse. *Id.* The physician never actually examined the victims. *Id.*

■ It is well established that expert witnesses are entitled to rely on hearsay evidence as support for their opinions, as long as that evidence is of a type reasonably

relied upon by other experts in the field; such evidence need not be independently admissible. *State v. Candela,* 929 S.W.2d 852, 866 (Mo.App.1996).

In the instant case, Dr. Beal was a physician with a private pediatric practice. In addition, he served as a member of the State Technical Assistance Team (STAT) in investigating allegations of abuse and neglect for the state. He also testified that he was certified to conduct SAFE exams and had performed approximately 1500 of these since 1992.

Dr. Beal testified that he reviewed medical records from Dr. Cook and Dr. Russell and investigative reports provided by DFS. Dr. Beal agreed that these were the type of documents upon which he and other experts normally rely in making medical determinations and arriving at their medical conclusions. Dr. Beal's opinion was that C.K. suffered multiple episodes of sexual assault, but he never identified Defendant as the perpetrator. In Missouri, an expert may testify to an opinion on an ultimate issue in a criminal case as long as he does not express an opinion on the guilt or innocence of the defendant. *Candela,* 929 S.W.2d at 867. The admission of expert testimony is within the sound discretion of the trial court. *Hendrix,* 883 S.W.2d at 938. We find no manifest injustice in the trial court's admission of Dr. Beal's testimony. Point Two is denied.

The judgment of the trial court is affirmed.

GARRISON and PREWITT, JJ., concur.