**STATE of Missouri, Plaintiff–Respondent,**

v.

**Daniel F. GILLARD, Defendant–Appellant.**

**No. 21675.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 15, 1999.

K. Louis Caskey, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Breck K. Burgess, Assistant Attorney General, of Jefferson City, MO, for Respondent.

JAMES K. PREWITT, Presiding Judge.

Following jury trial, Appellant Daniel F. Gillard, was convicted by a jury of the class C felony of abuse of a child, under Section 568.060, RSMo 1994. He was sentenced to seven years' imprisonment.

On appeal, Appellant raises one point with two parts, all concerning admissions of testimony under Section 491.075, RSMo.1994. The first part of Appellant's point alleges trial error in admitting the testimony of Lori Harmon, William Nichols, and Caroline Bradford because their statements lacked sufficient indicia of reliability. The second part again alleges error in admitting the testimony of the same individuals, for the reason that the statements were merely duplicative and cumulative and thus constituted improper bolstering.

Although the sufficiency of the evidence to support the conviction is not in dispute, we view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict. *State v. Kelley*, 945 S.W.2d 611, 613 (Mo.App.1997).

At the time of the alleged abuse suffered by the minor child, Appellant was the paramour of his mother. The mother lived in a mobile home with the child and Appellant in Texas County. Living nearby were Appellant's sister, mother and step-father, and his aunts and uncles. The child, C.N., was seven years old at the time of the abuse. C.N. testified that on November 27, 1995, his mother was working the night shift from 3:00 p.m. to 11:00 p.m., so after school he went to Appellant's place of work, stayed there until Appellant got off work, and then went home with Appellant. That evening, C.N. and Appellant had dinner at the home of Ruth Moore, Appellant's sister. After dinner, C.N. took a bath at the sister's home, and put on a t-shirt and shorts. The sister testified that she saw no bruises on C.N. that evening. C.N. testified that at the sister's home, Appellant picked him up by his shirt and up threw him down to the floor, and that he did not know why Appellant did so. Appellant then told him to go home.

C.N. went home and sat in a chair until Appellant got there. When Appellant arrived, he began hitting C.N. on his face with his fist and beating his legs with a stick. C.N. did not know how many times he was hit, but thought that the episode lasted approximately thirty minutes. Appellant then told C.N. not to tell anybody or he would "do it" again. C.N. then went to bed. When his mother woke him in the morning, she asked how he got the bruises, and C.N. told her he did not know. C.N. had bruising on both of his cheek bones and his ears, on his legs, and a laceration on his chin. When C.N. arrived at school that day, his teacher asked him how he got the bruises, but he would not tell her. The principal was called and he took C.N. home. The mother then sought medical attention for C.N..

At the Texas County Memorial Hospital, Division of Family Services (DFS) investigator William E. Nichols saw C.N. and his

mother walk past him as they were entering the emergency room. Nichols saw that C.N. had severe bruising to his face, and asked C.N. how he got the bruises. C.N. replied that he had been kicked by a cow. At trial, C.N. testified that he did not tell Nichols the truth at that point because he was afraid Appellant would "do it" again.[1]

C.N. was taken by ambulance to a hospital in Springfield for further care, where he told a registered nurse, Lori Harmon, that he was kicked by a cow. Again during testimony, C.N. stated he did not tell the truth "because [he] didn't want to get it done to [him] again." When C.N. disrobed for the doctor at the emergency room, he overheard the doctor say that he had been beaten. At this point, C.N. told the nurse and the doctor that he had been beaten, and he felt it was okay to tell them because "they already knew." Harmon testified that C.N. had extensive bruising and redness on his buttocks and all the way down the back side of his legs.

C.N. spent the night in the hospital and was then transported by Caroline Bradford, a DFS supervisor, to a foster home on November 29th. At the hospital, Bradford observed bruises on C.N.'s face and head area, and bruises on both legs. Bradford was with C.N. for approximately two and one-half hours at the hospital, and with him in the car for about two hours that day. C.N. told Bradford that "his dad" had spanked him; he did not describe further how he had acquired the bruises. Bradford testified that C.N. became very upset when she first told him he must go to a foster home. C.N. insisted he would not go to a foster home, and that his mother had told him he would not have to go to a foster home.

Bradford explained to C.N. that because his dad had hurt him and that his dad still lived in the home with his mother, he could not be returned to the home because they could not ensure his safety. C.N. was insistent that Bradford take him to the Sheriff's Department so he could tell the Sheriff what his dad had done, and to take him to the judge so he could explain to the judge what

his dad had done. C.N. was certain that one of them would put his dad in jail if Bradford would just take him to talk to them.

Nichols again met with C.N. at his office on November 30, which was three days after the beating. C.N. told Nichols that Appellant had beaten him with a stick described to be about two and one-half feet long and one inch in diameter.

Prior to the trial of this matter, a pre-trial hearing was held pursuant to Section 491.075, to determine the reliability of statements made by C.N. At this hearing, both Caroline Bradford and William Nichols testified. Lori Harmon was not present, but a hearing regarding her testimony was held pursuant to Section 491.075, on the day of the trial, prior to evidence being presented and out of the hearing of the jury panel. At the conclusion of both hearings, the trial court allowed the hearsay testimony of each of the witnesses presented. At the hearings, and at the trial, Appellant objected to this testimony because the statements did not have the sufficient indicia of reliability regarding the time, content and circumstances of the statements. As earlier mentioned, C.N. did testify at the trial and was cross-examined.

■ Our review of the trial court's decision to admit the minor child's out-of-court statements under Section 491.075, is limited to a determination of whether the decision amounted to an abuse of discretion. Section 491.075.1; *Kelley,* 945 S.W.2d at 614.

■ Section 491.075 permits the out-of-court statements of a child under twelve in a case arising out of a violation under Chapter 568 to be admitted at trial, if the "time, content and circumstances" of those statements provide "sufficient indicia of reliability," and the child victim testifies at trial. Section 491.075.1. "In determining whether a child's out-of-court statements possess 'sufficient indicia of reliability' for the purposes of Sec. 491.075, Missouri courts have adopted a totality of the circumstances test that includes the consideration of several, non-ex-

---

1. Nichols was at the hospital that day on an unrelated DFS matter. Because he was not involved in an investigation concerning the minor child in this case, he first asked the child's mother if he could visit with the child to find out what had happened.

clusive factors which include (1) spontaneity and consistent repetition; (2) the mental state of the declarant; and (3) the lack of a motive to fabricate." *Kelley,* 945 S.W.2d at 614.

The challenged testimony related to statements made by C.N. concerning his injuries. The statements were spontaneous in that C.N. was not prompted, cajoled, or coaxed into the responses. C.N. merely answered questions put to him. The core of his statements was consistent in that the Appellant was the person who inflicted the injuries, and the date, time and place were consistent in each statement. In some of his statements, C.N. said Appellant hit him with a stick. In other statements, C.N. said Appellant hit him with his fists, but never did he say that he was only hit with fists or a stick. C.N. did state that he was kicked by a cow, and that statement was inconsistent with the statement that Appellant beat him. However, it was his fear of being beaten again that motivated him to say that a cow kicked him. Also, the statement regarding the cow was not repeated after C.N. decided that the doctor and nurse suspected he had been beaten.

The testimony of the challenged witnesses related that the mental state of C.N. ranged from "flat" when he was in the emergency room and at the DFS office, to anger when Bradford transported him to a foster home. Contrary to Appellant's assertion that C.N. had a motive to fabricate, "to get the defendant out of his home," such statements were made by C.N. only after he was informed that he would be going to a foster home, and were made in an attempt to be reunited with his mother. Our consideration of the above-listed factors leads this court to conclude that the totality of the circumstances result in sufficient indicia of reliability, as expressed in *Kelley.*

■ As required by the statute, we find the testimony of each challenged witness possesses sufficient indicia of reliability for the time, content and circumstances of the statements. First, Lori Harmon, the registered nurse who admitted C.N. to the hospital in Springfield, testified that C.N. had responded to her question of how he received the bruises by stating: "My daddy did it. I was not kicked by a cow. My mom was there but she just let him do it. My dad told me not to say anything. I don't want to get my mom in trouble. Dad has never done this before." Her chart also noted that he said it "happened last night," and that he corrected himself by stating, "It is my stepdad."

The statements were made the day after the injuries were inflicted, and were consistent with other statements he made. The statement that his mother was present is admittedly inconsistent, but does not differ widely enough to prohibit this statement from admission under the statute. The circumstances of the statements to Harmon provide sufficient indicia of reliability as they were made to a nurse in the emergency room who was tending to the physical needs of C.N.. The trial court properly allowed Lori Harmon's testimony as permitted by Section 491.075.

■ The testimony of William Nichols resulted from conversations he had with C.N. at the emergency room in Houston, and a meeting two days later at his office. These conversations are reliable as to time. While the content of C.N.'s statements changed from the first conversation with Nichols to the second conversation, the change in his story was explained by C.N.'s explanation that he was afraid to tell the truth for fear that Appellant would "do it" to him again. Once the bruises on his legs were exposed to the doctor, C.N. consistently stated that the bruises were caused by Appellant, and he no longer repeated the story of being kicked by a cow. The circumstances of the statements given to Bradford also indicate reliability. Nichols has extensive experience interviewing children in abuse cases, and the statements were given to Nichols at a hospital and in his office which are locations which might convey to a child the seriousness of the event and what is said. The trial court did not err in finding that Nichols' statements possessed sufficient indicia of reliability to be admitted under Section 491.075.

■ Lastly, the testimony of DFS Supervisor Caroline Bradford related statements of C.N. made to Bradford on November 29,

1995, were within a couple days of the infliction of the injuries. Bradford spent two and one-half hours with C.N. at the hospital explaining to him that he was going to a foster home. C.N.'s response was to start yelling, clenching his fists and pacing back and forth in front of his hospital bed. C.N. screamed at Bradford telling her: "I'm not going to no foster home. I don't know why I have to got to a foster home. I don't know why I have to leave my mom. She's not the one who did this to me—my dad did."

During the time at the hospital, C.N. did not describe to Bradford how the bruises were inflicted; he only told her that his dad spanked him. After calming down C.N., and getting him dressed to leave the hospital, Bradford spent approximately two hours in the car with C.N.. She testified that during the drive, C.N. talked about being fearful for him mom with his mom being in the home with his dad, and continued repeating that he was not going to a foster home. He did not explain to Bradford how he got the bruises, nor did he tell her that he had been kicked by a cow. Bradford's testimony primarily conveyed C.N.'s response to his placement in a foster home. The trial court did not error in finding that the time, content, and circumstances of this conversation with C.N. presented sufficient indicia of reliability to allow Bradford to testify under Section 491.075.

█ It is also noteworthy that both DFS workers have extensive and continuing training, and have conducted numerous interviews and investigations concerning child abuse allegations. "Experience of the interviewer is a legitimate factor in determining reliability," and we find that the trial court could have properly considered the experience of the witnesses in this case. *Kelley*, 945 S.W.2d at 615; *State v. Worrel*, 933 S.W.2d 431, 435 (Mo.App.1996).

█ The second part of Appellant's point alleges trial error in allowing the testimony of the above-examined witness statements because the hearsay statements were duplication and cumulative of the complaining witness' testimony and thus constituted improper bolstering. Appellant did not raise this as a ground for objection to the witnesses' statements in the pre-trial hearings,

at trial, nor in the motion for a new trial. "The ground of an objection on appeal is limited to that stated at trial." *State v. George*, 921 S.W.2d 638, 645 (Mo.App.1996). Because Appellant is raising this new ground of objection on appeal, we need not review this alleged error.

The judgment is affirmed.

CROW, J., and PARRISH, J., concur.